William E. THOMPSON,
et al., Plaintiffs,

v.

JOHNSON COUNTY COMMUNITY
COLLEGE, et al., Defendants.

Civil Action No. 95–2196–GTV.

United States District Court,
D. Kansas.

June 6, 1996.

William Grimshaw, Olathe, KS, Benjamin C. Wood, Lawrence, KS, for plaintiffs.

Robert F. Lytle, Bruce F. Landeck, Bennett, Lytle, Wetzler, Martin & Pishny, L.C., Prairie Village, KS, David W. Hauber, Kenneth E. Holm, Boddington & Brown, Chartered, Kansas City, KS, for defendants.

### MEMORANDUM AND ORDER

VAN BEBBER, Chief Judge.

This matter is before the court on defendants' motion (Doc. 15) for summary judgment pursuant to Fed.R.Civ.P. 56. Plaintiffs have responded (Doc. 24) and oppose defendants' motion. For the reasons set forth below, defendants' motion is granted.

### I. BACKGROUND

Plaintiffs have brought this action against defendants alleging various statutory, constitutional, and state law violations. The defendants include one entity, Johnson County Community College ("College") and several individuals. The individual defendants consist of the College's vice-president for administrative services, director of human resources, and director of safety and security.

Plaintiffs' complaint contains three counts. In Count I, plaintiffs claim that defendants conducted video surveillance in the workplace in violation of Title I of the Electronic Communications Privacy Act ("Title I"),[1] 18 U.S.C. § 2510 et seq. Additionally, plaintiffs allege in Count II, brought under 42 U.S.C. § 1983, that this video surveillance infringed upon their Fourth Amendment rights against unreasonable searches. Finally, plaintiffs assert a privacy tort under state law in Count III alleging that defendants intruded upon their seclusion.

Defendants argue that summary judgment is appropriate on each count of plaintiffs' complaint. Defendants first contend that they did not violate Title I because the videotape surveillance did not intercept an oral communication. Next, defendants argue that their use of video surveillance was not prohibited Fourth Amendment conduct because plaintiffs had no reasonable expectation of privacy in the area searched. Finally, defendants assert that the court lacks federal jurisdiction over plaintiffs' remaining state claim.

### II. FACTS

The following facts are either uncontroverted or, if controverted, construed in the light most favorable to the plaintiff.[2] *Applied Genetics Int'l Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). Immaterial facts and factual averments not properly supported by the record are omitted.

Plaintiffs are security officers employed by the College. The College provided its security officers with a locker area in which to store their rain gear, radios, and other personal items. The security personnel lockers were located along one wall of a storage room. In addition to using this area to store their personal belongings, security personnel occasionally would utilize this area as a dressing and changing room.

This storage room/locker area also contained equipment for the College's heating and air-conditioning systems. Although security personnel could secure their individual lockers, the storage room was not locked. Additionally, plaintiffs were not the only College employees with access to the unlocked storage room. Maintenance personnel, service personnel, and other college employees

---

1. Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III") was amended and retitled by Title I of the Electronic Communications Privacy Act of 1986.

2. The court notes that plaintiffs' memorandum in opposition to defendants' motion for summary judgment does not comport to D.Kan. Rule 56.1. Specifically, plaintiffs' memorandum in opposition does not begin with a statement of facts referring with particularity to the movants' facts that are disputed. Nevertheless, the court has endeavored to identify which facts proffered by plaintiffs controvert facts offered by defendants. Facts which the court cannot identify as controverting defendants' factual contentions are deemed admitted for purposes of the instant motion. D.Kan. Rule 56.1.

also had access to the storage room. Those college employees did not need to secure permission from security personnel before entering the storage room/locker area.

In March 1994, defendants installed a video surveillance camera in the storage room/locker area. Two incidents had led to the installation of surveillance equipment. Security personnel had reported incidents of theft from their lockers to security supervisor Scott Wargin. Additionally, Wargin had received reports that certain night-shift security personnel were bringing weapons on campus. College policy prohibited security personnel from bringing weapons on campus or storing them in their lockers.

The video surveillance camera installed in the security personnel locker area was a video only recorder. It did not have audio capacity. The surveillance camera recorded activity in the locker area between the hours of 10:30 p.m. and 6:30 a.m. The College ceased videotaping this area on April 17, 1994. During the period of time that it was operational, the video surveillance camera recorded no pilferage of the lockers or violations of the college's weapons policy. With the exception of one tape, the surveillance tapes were erased and reused.

### III. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The court must examine the factual record and reasonable inferences therefrom in a light most favorable to the party who opposes summary judgment. *Applied Genetics,* 912 F.2d at 1241.

■ The defendants, as the moving party, have the initial burden of showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). A "material" fact is one "that might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), and a "genuine" issue is one for which "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The substantive law regarding a claim will identify which facts are material in a motion for summary judgment, and only factual disputes that might affect the outcome of the case under governing law will preclude entry of summary judgment. *Id.*

■ Once the moving party meets this burden, the burden shifts to the plaintiff to identify specific facts that show the existence of a genuine issue of material fact. *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Plaintiffs' burden is to ' "present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor." ' *Thomas v. International Business Machines,* 48 F.3d 478, 484 (10th Cir.1995) (quoting *Bacchus Indus., Inc.,* 939 F.2d at 891). Plaintiff cannot rely on conclusory allegations to defeat a properly supported motion for summary judgment. *White v. York International Corp.,* 45 F.3d 357, 363 (10th Cir.1995).

### IV. DISCUSSION

Plaintiffs advance three theories to support recovery. They claim that the video surveillance that defendants conducted in the workplace violated Title I of the Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.,* the Fourth Amendment of the United States Constitution, and Kansas state law. The court will address each theory in turn.

#### A. Title I

■ Plaintiffs first claim that defendants violated Title I by conducting video surveillance in the workplace. Under Title I, "any person whose wire or oral communications is intercepted, disclosed or used in violation of [the Act] may in a civil action recover from the person or entity which engage in that

violation such relief as may be appropriate." 18 U.S.C. § 2520.

The language of Title I is silent regarding video surveillance. Title I prohibits a person from intentionally intercepting, endeavoring to intercept, or procuring any other person to intercept or endeavor to intercept "any wire, oral or electronic communication...." 18 U.S.C. § 2511(1)(a). "Wire communication" is defined as "any aural transfer made ... through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception...." 18 U.S.C. § 2510(1). The statute defines "oral communication" as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation...." 18 U.S.C. § 2510(2). "Intercept" means "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

In determining the applicability of Title I to video surveillance, the court notes the critical distinction between silent video surveillance and video surveillance that also captures an audio signal. In *United States v. Koyomejian,* 970 F.2d 536 (9th Cir.1992), the Ninth Circuit Court of Appeals noted:

> If a person or entity transmits a closed circuit television picture of a meeting using wires, microwaves or another method of transmission, the transmission itself would be an electronic communication. Interception of the picture at any point without either consent or a court order would be violation of the statute. By contrast, if law enforcement officials were to install their own cameras and create their own closed circuit television picture of a meeting, the capturing of the video images would not be an interception under the statute because there would be no interception of the contents of an electronic communication. Intercepting the audio portion of the meeting

would be an interception of an oral communication, and the statute would apply to that portion.

*Id.* at 539–40 (quoting S.Rep. No. 541, 99th Cong., 2d Sess. 16–17, reprinted in 1986 U.S.C.C.A.N. 3555, 3570–71).

In determining that Title I does not prohibit domestic silent video surveillance, the *Koyomejian* court reasoned that silent video surveillance is analogous to pen registers.[3] In *New York Tel. Co.,* the Supreme Court held that pen registers were not subject to Title III, the predecessor of Title I, because they did not "hear sound ... [and] do not accomplish the 'aural acquisition' of anything...." 434 U.S. at 167, 98 S.Ct. at 369. The Ninth Circuit Court of Appeals held that this reasoning also applied to silent video surveillance. *Koyomejian,* 970 F.2d at 539.

Virtually every circuit that has addressed the issue of silent video surveillance has held that Title I does not prohibit its use. *See United States v. Falls,* 34 F.3d 674, 679 (8th Cir.1994); *United States v. Biasucci,* 786 F.2d 504, 508–09 (2d Cir.1986); *United States v. Torres,* 751 F.2d 875, 879 (7th Cir. 1985). Additionally, the Tenth Circuit Court of Appeals, in *United States v. Mesa–Rincon,* 911 F.2d 1433 (10th Cir.1990), held that Title III, the predecessor of Title I, does not prohibit the use of silent video surveillance. *Id.* at 1436.

On the other hand, the above cited cases implicitly imply that video surveillance that includes the capability to record audio conversations would violate Title I. In that situation, the video image captured by the surveillance camera is not what violates Title I. Rather, it is the interception of an oral communication that subjects the interceptor to liability.

In their current motion, defendants argue that they installed a silent video surveillance camera in the security personnel locker area. Defendants contend that, as a matter of law, they are entitled to summary judgment on

---

3. "A pen register is a mechanical device that records the numbers dialed on a telephone by monitoring the electrical impulses caused when the dial on the telephone is released. It does not overhear oral communications and does not indicate whether calls are actually completed." *United States v. New York Tel. Co.,* 434 U.S. 159, 161 n. 1, 98 S.Ct. 364, 367 n. 1, 54 L.Ed.2d 376 (1977).

this issue because silent video surveillance does not fall within the protection of Title I. The court agrees.

Defendants produced the video surveillance camera used in the security personnel locker area and the lone remaining video surveillance tape to plaintiffs' counsel for inspection. The lack of an audio track on the remaining videotape from the surveillance of the locker area is evidence that the video camera does not have audio capabilities.

Plaintiffs proffer an affidavit from an alleged audio-visual expert, William Brown, to controvert defendants' contention that the video surveillance camera lacked audio capabilities. Although he has not examined the actual video surveillance camera, Brown opines that the camera could have an audio input.

■ An affidavit offered in opposition to a motion for summary judgment must "be made on personal knowledge" and it must "set forth such facts as would be admissible in evidence." Fed.R.Civ.P. 56(e). Although an expert may testify at trial without personal knowledge of the facts he is testifying about, the expert's affidavit must contain an "opinion that would be admissible at trial." *City of Chanute, Kan. v. Williams Natural Gas Co.*, 743 F.Supp. 1437, 1444 (D.Kan. 1990).

■ There are several factors for the court to consider in determining whether the expert's opinion would be admissible at trial. Those factors include whether the expert's testimony will be of assistance to the trier of fact and whether the facts upon which the expert bases his opinion are the types of facts reasonably relied upon by experts in the field. *Id.* In *Mid–State Fertilizer v. Exchange Nat'l Bank*, 877 F.2d 1333 (7th Cir.1989), the Seventh Circuit Court of Appeals noted that an affidavit by an expert in opposition to summary judgment must contain a process of reasoning that begins from a firm foundation. *Id.* at 1339. " 'Expertise is a rational process and a rational process implies expressed reasons for judgment'.... An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Id.* (quoting *FPC v. Hope Natural Gas. Co.*, 320 U.S. 591, 627, 64 S.Ct. 281, 299, 88 L.Ed. 333 (1944)).

■ The court finds that Brown's affidavit is insufficient to create a genuine issue of material fact regarding the surveillance camera's audio capabilities. The video surveillance camera was available for plaintiffs' expert to examine. Rather than examine the camera before forming his opinion, the expert relies on conclusory and speculative assertions that the camera likely has an audio input. This speculation by plaintiffs' expert does not comport with the affidavit requirement in Fed.R.Civ.P. 56(e). Further, plaintiffs do not controvert defendants' fact that the remaining tape from the video surveillance contains no audio track.

The court finds that defendants installed a silent video surveillance camera in the security personnel locker area. Because the use of a silent video surveillance camera does not violate Title I, the court concludes, as a matter of law, that defendants are entitled to summary judgment on this issue.

In a further attempt to survive summary judgment on this issue, plaintiffs maintain that Title I also prohibits the disclosure of the contents of a wire, oral, or electronic communication and the intentional use of information obtained through a prohibited interception. 18 U.S.C. §§ 2511(1)(c) & (d). Plaintiffs argue that defendants' use of the information gathered from the video surveillance would be a separate, distinct violation of Title I.

Although plaintiffs correctly state the law, their argument is without merit. The statutory provisions that plaintiffs cite contain the same interception requirement that the court addressed above. For the reasons stated, the court concludes that, as a matter of law, plaintiffs cannot maintain any cause of action under Title I. Thus, summary judgment on Count I of plaintiffs' Complaint is appropriate.

### B. Fourth Amendment

■ In Count II, plaintiffs have brought a claim pursuant to 42 U.S.C. § 1983. They contend that defendants' warrantless video surveillance searches of the security person-

nel locker area violated their Fourth Amendment rights. The court disagrees.

■ Domestic silent video surveillance is subject to Fourth Amendment prohibitions against unreasonable searches. *See Falls,* 34 F.3d at 678; *Koyomejian,* 970 F.2d at 541; *Torres,* 751 F.2d at 882. However, this does not mean that defendants' use of video surveillance automatically violated plaintiffs' Fourth Amendment rights. Rather, the court first must determine whether plaintiffs had a reasonable expectation of privacy in their locker area. *See Katz v. United States,* 389 U.S. 347, 351–52, 88 S.Ct. 507, 511–12, 19 L.Ed.2d 576 (1967). If plaintiffs had no reasonable expectation of privacy in this area, there is "no fourth amendment violation regardless of the nature of the search." *United States v. Taketa,* 923 F.2d 665, 672 (9th Cir.1991).

■ To establish a reasonable expectation of privacy in the security personnel locker area, plaintiffs must demonstrate that they had a subjective expectation of privacy in that area and that this expectation was objectively reasonable. *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979); *Katz,* 389 U.S. at 361, 88 S.Ct. at 516–17. Plaintiffs claim that they had a subjective expectation of privacy in their locker area and that this expectation was objectively reasonable. They contend that their locker area provided them a place to store their personal belongings, a place to change into their work or personal clothes, and a place to engage in conversation or conduct that was private and unobserved.

Defendants first respond that plaintiffs could not have a subjective expectation of privacy in the security personnel locker area. Additionally, defendants argue that even if plaintiffs had a subjective expectation of privacy, this expectation was not objectively reasonable. In support, defendants assert that the security personnel locker area is similar to hallway lockers in a school. The security personnel locker area was part of a storage room that also housed the College's heating and air-conditioning equipment. Additionally, the College did not limit access to this storage room. Security personnel and other college employees, including mainte-nance and service personnel, had unfettered access to this storage room. Consequently, defendants argue that the open, public nature of the security personnel locker area defeats any reasonable expectation of privacy in this area. The court agrees.

As the Ninth Circuit noted in *Taketa,* video surveillance "in public places, such as banks, does not violate the fourth amendment; the police may record what they normally may view with the naked eye." 923 F.2d at 667. In the employment context, the Supreme Court has held that "some government offices may be so open to fellow employees or the public that no expectation of privacy is reasonable." *O'Connor v. Ortega,* 480 U.S. 709, 717–18, 107 S.Ct. 1492, 1498, 94 L.Ed.2d 714 (1987) (plurality).

In the instant action, viewing the facts in a light most favorable to plaintiffs, the court finds that they did not have a reasonable expectation of privacy in the security personnel locker area. This area was not enclosed. Plaintiffs' activities could be viewed by anyone walking into or through the storage room/security personnel locker area. Additionally, plaintiffs cannot maintain that the security personnel locker area was reserved for their exclusive use considering that other college personnel also had regular access to this area. *See Taketa,* 923 F.2d at 673 (court found that employee had a reasonable expectation of privacy in an office reserved for his exclusive use). The court concludes that plaintiffs' lack of a reasonable expectation of privacy in the security personnel locker area defeats their claim that defendants violated their Fourth Amendment right to privacy.

■ Additionally, plaintiffs' Fourth Amendment claim would not survive summary judgment even if they had established a reasonable expectation of privacy in the security personnel locker area. Defendants also are entitled to summary judgment on this issue because their warrantless search of the security personnel locker area was reasonable. *See New Jersey v. T.L.O.,* 469 U.S. 325, 337, 105 S.Ct. 733, 740, 83 L.Ed.2d 720 (1985) (second prong of Fourth Amendment inquiry involves the reasonableness of the search).

To determine the reasonableness of a search in the workplace, the court "must balance the invasion of the employees' legitimate expectations of privacy against the government's need for supervision, control, and the efficient operation of the workplace." *O'Connor*, 480 U.S. at 719–20, 107 S.Ct. at 1499. In striking this balance, the Supreme Court observed in *O'Connor* that "work-related" searches generally satisfy "the Fourth Amendment reasonableness requirement." *Id.* at 720–21, 107 S.Ct. at 1499 (citations omitted). The Court held that public employer searches conducted to investigate "work-related misconduct[ ] should be judged by the standard of reasonableness." *Id.* at 725, 107 S.Ct. at 1502. On the other hand, searches that are not work-related, even though conducted in the workplace, generally require a warrant. *See Taketa*, 923 F.2d at 675 (video surveillance required a warrant after investigation of an employee changed from an internal affairs investigation to a criminal investigation).

The court finds that both the inception and the scope of the video surveillance defendants conducted was reasonable. It is uncontroverted that defendants' purpose for the video surveillance was work-related; they were investigating reports of employee misconduct in the locker area. Security personnel complained to supervisors that items were stolen from their lockers and that some security officers were bringing weapons on campus. Defendants established the video surveillance for a limited period of time to confirm or dismiss those allegations. Thus, the court concludes that the video surveillance of the security personnel locker area was reasonable and that, as a matter of law, summary judgment on this issue is appropriate.

### C. State Claim

Plaintiffs allege a privacy tort in Count III of their complaint. They claim that defendants' video surveillance intruded upon their seclusion.

As previously discussed, defendants are entitled to summary judgment on plaintiffs' federal law claims over which the court has original jurisdiction pursuant to 28 U.S.C. § 1331. In Count III of their complaint, plaintiffs invoked the court's supplemental jurisdiction over their pendent state claim under 28 U.S.C. § 1367. Because the court no longer has federal question jurisdiction in this matter, there is no basis for it to maintain supplemental jurisdiction over plaintiffs' pendent state claim. Lacking subject matter jurisdiction, the court, *sua sponte*, dismisses Count III of plaintiffs' complaint without prejudice.

IT IS, THEREFORE, BY THE COURT ORDERED that defendants' motion (Doc. 15) for summary judgment on Counts I and II of plaintiffs' complaint is granted.

IT IS FURTHER ORDERED that Count III of plaintiffs' complaint is dismissed without prejudice.

The case is closed.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**