BRANNEN et al., Appellants,

v.

KINGS LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, Appellee.

[Cite as *Brannen v. Kings Local School Dist. Bd. of Edn.* (2001), 144 Ohio App.3d 620.]

Court of Appeals of Ohio,
Twelfth District, Warren County.

No. CA2000-11-098.

Decided July 16, 2001.

622

*Forg & Forg* and *John H. Forg,* for appellants Phyllis Brannen and Shauna Crawford.

*McCaslin, Imbus & McCaslin* and *E. Gary Winters,* for appellee.

POWELL, Judge.

Plaintiffs-appellants, Phyllis Brannen and Shauna Crawford, appeal the decision of the Warren County Court of Common Pleas, granting summary judgment to defendant-appellee, Board of Education, Kings Local School District ("Kings"). For the reasons that follow, we affirm the judgment of the trial court.

Brannen and Crawford [1] were employed as custodians at Kings High School in 1998. Appellants were both members of the Ohio Association of Public School

---

1. In this decision, the term "appellants" will be used when referring to Brannen and Crawford collectively.

Employees, Local 27 ("OAPSE Local 27"). A collective bargaining agreement between OAPSE Local 27 and Kings covered the terms and conditions of appellants' employment.

In the fall of 1998, James Irvin, the supervisor of custodians for Kings, suspected that the third-shift custodians were not working during large portions of their shifts. Third-shift custodians usually work without direct supervision between the hours of 10:00 p.m. and 6:00 a.m. Irvin sought and received approval from David A. Query, Kings' superintendent, to install a hidden video camera in a staff break room. The camera recorded the activities in the break room for one week from 6:00 p.m. until 6:00 a.m. The camera did not record any sounds or conversations. Irvin reviewed the tapes and chronicled in detail the time in which the third-shift custodians spent in the break room rather than working. Irvin determined that the three high school custodians and one middle school custodian were taking unauthorized breaks for many hours, while turning in time sheets indicating they had worked their full eight-hour shifts.

Irvin presented his findings along with the videotapes to Query. Query summoned the custodians to his office for individual meetings. The president of OAPSE 27 and an OAPSE field representative were present at each meeting. Query showed the custodians a portion of the tapes and provided them an opportunity to respond. Query informed the custodians that their employment was terminated for "cheating the [school] district." After the meetings, the OAPSE representative privately negotiated a compromise settlement with Query. By the terms of the settlement, each custodian admitted taking unauthorized breaks during regular shifts, agreed to a suspension, and agreed to have his or her paycheck "docked" in an amount equal to the time spent on unauthorized breaks. In return, Query agreed that Kings would continue to pay for existing insurance benefits and would not recommend termination. Each custodian signed the agreement.

In the fall of 1999, appellants filed a four-count suit against Kings in the Warren County Court of Common Pleas. In their first count, appellants alleged that the installation of the hidden video camera in the break room violated their right to be free from unlawful searches guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution and Section 14, Article I of the Ohio Constitution. Count two claimed that the installation of the video camera constituted gender discrimination in violation of R.C. 4112.01(A) and 4112.99 because the third-shift custodians of the high school were all female, and no cameras were installed to monitor the activities of male custodians. In the third count, appellants also claimed that Kings discriminated against them on the basis of their gender because the custodian of the middle school was male and he received a less severe disciplinary action. The fourth count asserted that Kings

failed to pay appellants minimum wage for two pay periods in violation of the federal Fair Labor Standards Act and R.C. 4115.02 and 4115.10.

Thereafter, Kings moved the trial court for summary judgment. The trial court reviewed the merits of appellants' claims and determined that Kings was entitled to judgment as a matter of law.

Appellants appeal from the decision of the trial court and raise one assignment of error for review. Appellants assign as error the trial court's decision to grant summary judgment to Kings. Appellants contend that there are genuine issues of material fact that can be resolved only at trial and that Kings is therefore not entitled to judgment as a matter of law. In addition to arguing the validity of each of the claims in their complaint, appellants maintain that the trial court failed to recognize that Kings' actions breach the collective bargaining agreement between OAPSE 27 and Kings.

It is appropriate for a trial court to grant summary judgment pursuant to Civ.R. 56(C) when (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to only one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47. A party seeking summary judgment bears the initial burden of informing the court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact as to the essential elements of the nonmoving party's claims. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 273–274. If the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden to set forth specific facts showing that there is a genuine issue for trial. *Id.;* Civ.R. 56(E). An appellate court reviews a trial court's decision to grant summary judgment *de novo. Jones v. Shelly Co.* (1995), 106 Ohio App.3d 440, 666 N.E.2d 316.

Appellants first argue that the trial court failed to recognize that Kings' actions breached the collective bargaining agreement between OAPSE 27 and Kings. Appellants maintain that the trial court's decision is "permeate[d]" by the fallacious assumption that Kings legitimately disciplined appellants for violating its "policy" on break times. There is no policy about break times in the collective bargaining agreement. Appellants argue that the regulation of break time is a mandatory subject for negotiation through collective bargaining and Kings cannot "unilaterally" institute a break-time policy. By disciplining them for excessive unauthorized break time, appellants assert that Kings *per se* violated the collective bargaining agreement.

R.C. 4117.10(A) provides that a collective bargaining agreement between a public employer and the bargaining unit "governs the wages, hours, and terms and conditions of public employment covered by the agreement." The section further states that "[i]f the agreement provides for a final and binding arbitration of grievance, public employers, employees, and employee organizations are subject solely to that grievance procedure." Thus, when the collective bargaining agreement provides for binding arbitration of grievances related to wages, hours, and the terms and conditions of employment, binding arbitration is the *exclusive* remedy for violations of employees' employment rights arising from the collective bargaining agreement. *Myers v. Riley* (1994), 98 Ohio App.3d 133, 144–147, 648 N.E.2d 16, 23–25; *Gudin v. W. Res. Psychiatric Hosp.* (June 14, 2001), Franklin App. No. 00AP–912, unreported, 2001 WL 664389. The collective bargaining agreement between OAPSE 27 and Kings provides for binding arbitration of grievances. Therefore, to the extent that appellants claim that the actions of Kings violated their rights under the collective bargaining agreement, binding arbitration is their exclusive remedy and the trial court had no jurisdiction to consider the merits of their complaint.

Further, if a party asserts claims that arise from or depend on collective bargaining rights created by R.C. Chapter 4117, the remedies provided in that chapter are exclusive. *Franklin Cty. Law Enforcement Assn. v. Fraternal Order of Police, Capital City Lodge No. 9* (1991), 59 Ohio St.3d 167, 572 N.E.2d 87, paragraph two of the syllabus. Accordingly, the State Employment Relations Board ("SERB") has exclusive jurisdiction to resolve charges of unfair labor practices and other matters committed to it pursuant to R.C. Chapter 4117. *E. Cleveland v. E. Cleveland Firefighters Local 500, I.A.F.F.* (1994), 70 Ohio St.3d 125, 127–128, 637 N.E.2d 878, 879–882. Therefore, to the extent that appellants claim that the actions of Kings constituted an unfair labor practice, SERB has exclusive jurisdiction to resolve the charge and the trial court did not have jurisdiction to consider the merits of their complaint.

With these jurisdictional principles in mind, we will consider each of appellants' claims and evaluate whether summary judgment was proper.

Appellants assert as their "principal claim" that Kings' installation of a hidden video camera in the break room constituted an unlawful search and seizure. Appellants argue that the collective bargaining agreement conferred a reasonable expectation of privacy "in their persons." Relying on their interpretation of federal case law, appellants contend that a public employer cannot conduct searches in the workplace unless a collective bargaining agreement or contract authorizes searches. Appellants assert that the use of surveillance cameras is directly related to a term or condition of employment and, as such, is a mandatory subject of collective bargaining. Since the collective bargaining

agreement does not address hidden surveillance of employees, appellants charge that Kings' conduct is a breach of the collective bargaining agreement and is an unconstitutional search and seizure.

We begin by noting that to the extent appellants' claim for damages resulting from the search is based on Kings' alleged breach of the terms and conditions of employment contained in the collective bargaining agreement, neither this court nor the trial court has jurisdiction to consider the merits of the claim. Appellants are members of a bargaining unit with a valid enforceable collective bargaining agreement in place, which provides for a grievance procedure. "An employee has no more right to ignore a collective bargaining agreement than does an employer." *Provens v. Stark Cty. Bd. of Mental Retardation & Developmental Disabilities* (1992), 64 Ohio St.3d 252, 262, 594 N.E.2d 959, 966 (Douglas, J., concurring).

Even though the crux of appellants' argument relies on their theory that Kings deprived them of rights bestowed upon them by the collective bargaining agreement, appellants also appear to claim a violation of constitutional rights. Generally, a common pleas court has jurisdiction to consider a complaint that asserts a violation of rights independent of a collective bargaining agreement or R.C. Chapter 4117, such as a deprivation of federal constitutional rights. *Franklin Cty. Law Enforcement Assn.* at paragraph two of the syllabus; *Myers,* 98 Ohio App.3d at 146–147, 648 N.E.2d at 24–25. Therefore, we will consider whether the trial court correctly concluded that the video recording of the break room activities was not an unconstitutional search and seizure.

The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. Searches and seizures by government employers or supervisors are subject to the restraints of the Fourth Amendment. *O'Connor v. Ortega* (1987), 480 U.S. 709, 715, 107 S.Ct. 1492, 1496, 94 L.Ed.2d 714. However, government employees' Fourth Amendment rights are implicated only when the conduct of government employers or supervisors infringes upon an expectation of privacy in the workplace that society is prepared to consider reasonable. *Id.* The workplace includes those areas and items that are related to work and are generally within the employer's control, including hallways, offices, locker rooms, break rooms, cafeterias, desks, and file cabinets. See *id.; Thompson v. Johnson Cty. Community College* (D.Kan. 1996), 930 F.Supp. 501, 507, affirmed (C.A.10, 1997), 108 F.3d 1388, 1997 WL 139760.

An employee's expectation of privacy in the workplace must be assessed in the context of the employment relation on a case-by-case basis. *O'Connor,* 480 U.S. at 717–718, 107 S.Ct. at 1497–1498, 94 L.Ed.2d at 723–724. The operational realities of the workplace may make some employees' expecta-

tions of privacy unreasonable. *Id.* at 717, 107 S.Ct. at 1497, 94 L.Ed.2d at 723. A public employee's expectation of privacy in the workplace may be reduced by virtue of actual office practices, work procedures, or regulation. *Id.* "[S]ome government offices [may be] so open to fellow employees or the public that no expectation of privacy may be reasonable." *Id.* at 718, 107 S.Ct. at 1498, 94 L.Ed.2d at 723. For example, security personnel at a community college did not have a reasonable expectation of privacy in a locker room because other college employees had "unfettered access" to the room and could view the activities occurring therein. *Thompson,* 930 F.Supp. at 507.

■ Viewing the facts in this case in a light most favorable to appellants, we conclude that appellants did not have a reasonable expectation of privacy in the break room. As in the locker room in *Thompson,* other school employees at Kings had unfettered access to the break room, including the principal and most of the teachers. The break room was more of an all-purpose utility room that contained a washing machine, clothes dryer, cleaning supplies, cleaning machines, lockers, a refrigerator, and a microwave oven. Teachers could access the room whenever they needed something contained inside. Crawford described the break room as "open all the time." The break room was so open to fellow employees that the custodians could not have a reasonable expectation of privacy in this area.[2] Appellant's lack of a reasonable expectation of privacy in the break room defeats their claim that Kings violated their Fourth Amendment rights.

Additionally, appellants' claim that Kings violated their Fourth Amendment rights would not survive summary judgment even if they were able to establish a reasonable expectation of privacy in the break room. Kings is also entitled to summary judgment on this claim because the warrantless search of the break room was reasonable.

■ Generally, a court must balance the employees' legitimate expectations of privacy with the government's need for supervision, control, and the efficient operation of the workplace to determine the constitutionality of searches conducted by government employers. *O'Connor,* 480 U.S. at 719–720, 107 S.Ct. at 1499, 94 L.Ed.2d at 724–725. Therefore, public employer searches of work-related misconduct are judged by the standard of reasonableness under all the circumstances. *Id.* at 725–726, 107 S.Ct. at 1502, 94 L.Ed.2d at 728–729.

■ There is a two-part test to determine the reasonableness of a search conducted by a government employer. First, a court must consider whether the

---

2. This is not to say that the custodians could not have a reasonable expectation of privacy with regard to their lockers or other personal items that may have been contained in the break room. See, *e.g., O'Connor,* 480 U.S. at 718, 107 S.Ct. at 1498, 94 L.Ed.2d at 724 (finding that an employee had a reasonable expectation of privacy in his desk and file cabinets).

governmental action was justified at its inception. *Id.* at 726, 107 S.Ct. at 1502, 94 L.Ed.2d at 728–729. Ordinarily, a search of an employee's office by a supervisor is "justified at its inception" when there are reasonable grounds for suspecting that the search will reveal evidence of work-related misconduct. *Id.* at 727, 107 S.Ct. at 1502, 94 L.Ed.2d at 729–730. Second, the search as actually conducted must be reasonably related in scope to the circumstances that justified the interference in the first place. *Id.* A search is permissible in scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in relationship to the nature of the suspected misconduct. *Id.*

In *Thompson,* the security supervisor received reports that theft was occurring and that third-shift security personnel were carrying weapons onto the campus in contravention of a college policy. *Thompson,* 930 F.Supp. at 504. The college authorized the installation of a hidden surveillance camera that did not have audio capacity in the security locker room. *Id.* The camera recorded the activity in the area only between the hours of 10:30 p.m. and 6:30 a.m. for approximately one month. *Id.* The court concluded that both the inception and the scope of the surveillance were reasonable. *Id.* at 508. The purpose for the search was to investigate worker misconduct. *Id.* The college authorized the video surveillance only for a limited period of time to confirm or dismiss allegations. *Id.*

Similarly, we conclude that the inception and the scope of the search were both reasonable in this case. Kings was justified in authorizing the installation of the video camera because Irvin reported that he suspected the third-shift custodians were taking excessive, unauthorized breaks. The video camera was installed solely for the purpose of confirming or denying the allegations. The video camera created only a visual record of the activities in the break room; it did not record private conversations. The camera was operational only between 10:00 p.m. and 6:00 a.m. for one week. The camera recorded only that which Irvin himself could have observed in person. "[T]he mere fact that the observation is accomplished by a video camera rather than the naked eye, and recorded on film rather than in a supervisor's memory, does not transmogrify a constitutionally innocent act into a constitutionally forbidden one." *Vega–Rodriguez v. Puerto Rico Tel. Co.* (C.A.1, 1997), 110 F.3d 174, 181. The video surveillance of the break room was a reasonable search. Summary judgment in favor of Kings on the first count of the complaint was appropriate.

The second and third counts of appellants' complaint claim that Kings engaged in unlawful gender discrimination in violation of R.C. Chapter 4112. Appellants assert that the installation of the video camera constitutes gender discrimination because the third-shift custodians of the high school were female, and no cameras were installed to monitor the activities of male custodians. Appellants also argue

that Kings discriminated against them on the basis of their gender because the male custodian of the middle school received a less severe disciplinary action for the same conduct.

█ Public employees do not have a private cause of civil action against their employer to redress their employer's alleged violations of policies embodied in the Ohio Constitution when there are reasonably satisfactory remedies provided by statutory enactment and administrative process. *Provens*, 64 Ohio St.3d 252, 594 N.E.2d 959, at syllabus. Ohio civil rights laws prohibiting discrimination on the basis of certain protected classes are derived from policies embodied in the Ohio Constitution. See *id.* at 258, 594 N.E.2d at 963–964. R.C. Chapter 4112 provides aggrieved public employees with meaningful relief against discriminatory practices, including but not limited to the hiring, reinstatement, or upgrading of employees with or without back pay, actual damages, punitive damages, and reasonable attorney fees. *Id.;* R.C. 4112.05(G).

█ Thus, R.C. Chapter 4112 provides an extensive regulatory scheme for appellants to address Kings' alleged civil rights violations. In addition, appellants, as public employees, have additional remedies available through R.C. Chapter 4117 for bringing charges and grievances against Kings for unfair labor practices. The collective bargaining agreement in this case also specifically forbids discrimination on the basis of gender and provides grievance procedures to address employee complaints. Appellants have ample satisfactory remedies to address Kings' alleged discriminatory conduct. Therefore, appellants, as public employees, do not have a private civil cause of action against Kings for gender discrimination. The trial court correctly granted summary judgment to Kings on the issue of gender discrimination.

In the fourth count of appellants' complaint, they contend that Kings failed to pay them a minimum wage for two pay periods in violation of the federal Fair Labor Standards Act and Ohio's Minimum Fair Wage Standards Act. Pursuant to the disciplinary agreements appellants signed, Kings deducted from their November 19, 1998 paychecks an amount equal to the time each spent on unauthorized breaks. Appellants maintain that the deductions from their paychecks were illegal because the collective bargaining agreement did not have a policy regarding the length and frequency of breaks. Appellants also argue that the deductions were illegal because the evidence of the unauthorized breaks came from an unconstitutional search and seizure. Appellants theorize that the "illegal" deductions resulted in pay rates far less than the minimum wage requirements of federal and state law.

█ Appellants' minimum-wage claims depend entirely upon a breach of the collective bargaining agreement or a violation of their constitutional rights to be

free from unreasonable searches and seizures. As we have already established, neither this court nor the trial court has jurisdiction to consider the merits of appellants' claim to the extent that it is based upon an alleged breach of the terms and conditions of employment contained in the collective bargaining agreement. Appellants could have sought redress through the grievance procedure contained in the collective bargaining agreement. Instead, appellants signed disciplinary agreements negotiated on their behalf by union representatives that allowed them to maintain their employment and return the salary they accepted while taking excessive unauthorized breaks. In addition, we have already determined that appellants did not have a reasonable expectation of privacy in the break room, and that Kings' use of a surveillance camera did not constitute an illegal search. Therefore, the trial court correctly granted summary judgment to Kings on appellants' minimum-wage claims.

Based on the foregoing, appellants' assignment of error is overruled. The trial court correctly determined that Kings was entitled to summary judgment. The judgment of the trial court is affirmed.

*Judgment affirmed.*

WILLIAM W. YOUNG, P.J., and WALSH, J., concur.