Marla BEVAN, Plaintiff,

v.

Jennifer SMARTT, Jason Richman, and John Does I–X, Defendants.

No. 2:02–CV–660 DB.

United States District Court, D. Utah, Central Division.

April 9, 2004.

John R. Lund, Richard A. Vazquez, Snow, Christensen & Martineau, Salt Lake City, UT, for Defendants.

W. Andrew McCullough, McCullough & Associates, Midvale, UT, for Plaintiff.

## ORDER

BENSON, Chief Judge.

Before the Court are Plaintiff's Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment and for Attorneys' Fees. Plaintiff moves for a judgment as to liability on her Fourth Amendment claims, which are brought under 42 U.S.C. § 1983. Defendants move for summary judgment as to all Plaintiff's claims against all Defendants. At a hearing on December 23, 2003 this Court granted Defendants' Motion for Summary Judgment with respect to Defendants Steven Parkin, Mike Davis, and South Salt Lake City Corporation, and took Plaintiff's and Defendants' motions as to the remaining Defendants under advisement.[1] Having considered the parties' arguments, briefs, and the relevant law, the Court now issues the following Order.

1. References to "Defendants" in the remainder of this Opinion refer only to the two remaining defendants, Officers Smartt and Richman.

2. The parties offer widely disparate accounts of the officers' motives in undertaking the search, the degree to which American Bush had conformed to the Ordinance in the past, prior searches conducted by Officer Smartt at this location, and the manner in which Plaintiff and Officers conducted themselves. These issues are irrelevant to the determination of whether the entry by the Officers into the dressing room on July 1, 2002 violated protections guaranteed by the Fourth Amendment. Because these factual disputes have no bearing on the relevant legal issues, they do not preclude the grant of a motion for summary judgment. *Anderson v. Liberty Lobby,*

## BACKGROUND

■ This case arises out of a search conducted by the South Salt Lake City Police on July 1, 2002 at American Bush, a dancing establishment subject to a South Salt Lake City ordinance regulating sexually-oriented businesses (South Salt Lake City Code § 5.56; the "Ordinance"). (Plaintiff's Memo ISO Motion for Partial Summary Judgment at 3.) Defendant Police Officer Jennifer Smartt entered American Bush on July 1 as part of an effort to ensure compliance with the Ordinance.[2] (Defendants' Combined Memo at ¶ 20.) Upon entering, Officer Smartt observed a dancer walking off the stage and toward the dancers' dressing room.[3] (*Id.*) Smartt called out "Police," but the dancer continued to walk away from the stage and entered the dressing room, which was already occupied by Plaintiff.[4] (*Id.* at ¶ 21.) Officer Smartt followed the dancer into the dressing room, Officer Richman joined Officer Smartt shortly thereafter, and after an exchange with the officers, Plaintiff was arrested for obstruction of justice, providing false information to police officers, and violation of the employee permit requirements of the Ordinance. (*Id.* at ¶¶ 21–22, 26, 30.) Plaintiff brought suit, alleging a

*Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

3. Officer Smartt had conducted another search at American Bush on June 27, 2002. During that incident, Officer Smartt had found the door to the dressing room locked; upon requesting admittance, the dancer inside the room unlocked the door and allowed Officer Smartt to enter. (Plaintiff's Memo ISO Motion for Summary Judgment at ¶¶ 6–7; Defendants' Supplemental Memo at 4.) The earlier search does not form part of Plaintiff's Complaint.

4. There is insufficient evidence before the Court to determine whether Hazel, the dancer whom Officer Smartt followed, heard the Officers.

violation of her Fourth Amendment right to be free from unreasonable searches and seizures.[5]

## LEGAL STANDARD

"Summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Bower v. Stein Eriksen Lodge Owners Ass'n, Inc.,* 201 F.Supp.2d 1134, 1137 (D.Utah 2002) (quoting Fed.R.Civ.P. 56(c)). "In applying this standard, the court must construe all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Pueblo of Santa Ana v. Kelly,* 104 F.3d 1546, 1552 (10th Cir.1997)).

## ANALYSIS

Defendant Officers contend they "executed a valid warrantless administrative search in an area where Ms. Bevan had no reasonable expectation of privacy." (Defendants' Combined Memo at 2.) This contention combines two potential justifications for the search, each of which must be assessed under a different rubric.

*Warrantless Administrative Searches*

■ A warrantless administrative search of business premises subject to close regulation[6] is valid if the search is conducted pursuant to a regulatory scheme that satisfies three requirements:

First, there must be a "substantial" government interest that informs the regulatory scheme pursuant to which the inspection is made... Second, the warrantless inspections must be "necessary to further [the] regulatory scheme" ... Finally, "the statute's inspection program, in terms of the certainty and regularity of its application, [must] provid[e] a constitutionally adequate substitute for a warrant." In other words, the regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers.

*New York v. Burger,* 482 U.S. 691, 702–03, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987) (internal citations omitted). While the *Burger* test articulates the standards that must be met by an ordinance authorizing warrantless administrative searches of closely-regulated industries if it is to pass constitutional muster, implicit in *Burger* is the assumption that a particular search must comply with the ordinance purporting to authorize it in order to be valid under the Fourth Amendment. It would make very little sense to require ordinances authoriz-

---

**5.** Suit was originally brought on behalf not only of Smartt, but American Bush and Gayle Petersen, an owner of American Bush, as well. (Complaint at 2.) A settlement was ultimately reached between the other Plaintiffs and Defendants, leaving Bevan as the only remaining Plaintiff. (Plaintiff's Memo ISO Motion for Partial Summary Judgment at 4.)

**6.** There is no need for the Court to address the merits of the parties' debate regarding whether sexually-oriented businesses qualify as closely-regulated industries and can there-

fore be subject to heightened regulation, including warrantless administrative searches. (Plaintiff's Memo ISO Motion for Partial Summary Judgment at 7 *et seq.;* Defendants' Combined Memo at 13 *et seq.*) Even if the Court were to assume both that American Bush is part of a closely-regulated industry and that the Ordinance passes constitutional muster, the Court would still find that Defendants exceeded the authority given them by the Ordinance and that the search was therefore not a valid warrantless administrative search.

ing warrantless administrative searches to comply even with an attenuated version of the Fourth Amendment's requirements, only to bless particular searches which exceed the scope of the ordinances authorizing them.

The Ordinance makes it unlawful for any sexually-oriented business licensee or employee knowingly to

> refuse to permit officers or agents of the City of South Salt Lake who are performing functions connected with the enforcement of this Chapter to inspect the portions of the sexually oriented business premises *where patrons are permitted,* for the purpose of ensuring compliance with this Chapter, at any time the sexually oriented business is occupied by patrons or open for business.

South Salt Lake Code § 5.56.310(h) (emphasis added). Defendants in this case entered the dancers' dressing room, which is not an area of American Bush in which patrons are permitted.[7] The Court assumes, *arguendo,* that the Ordinance passes constitutional muster,[8] but the search in question remains invalid. Defendants' actions on July 1, 2002, exceeded the authority granted by the Ordinance, and the search therefore cannot be characterized as a valid warrantless administrative search.

### Reasonable Expectation of Privacy in the Dressing Room

■■■ Defendants suggest that, should the Court find that the search was not valid as a warrantless administrative search, the search remains reasonable because Plaintiff could have no reasonable expectation of privacy in the location searched: "Since there was no reasonable expectation of privacy in the area searched, there was no Fourth Amendment violation. The analysis is that simple." (Defendants' Reply ISO Defendants' Motion for Summary Judgment at 7.)

That expectation of privacy which is significant for the purposes of Fourth Amendment analysis has subjective and objective aspects. In order for a particular search to come within the Fourth Amendment's prohibition on unreasonable searches and seizures, a claimant must manifest a subjective expectation of privacy in the area searched, and that expectation must be one society is prepared to recognize as objectively reasonable. *See California v. Greenwood,* 486 U.S. 35, 39–40, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988).

---

7. Defendants attempt to undercut Plaintiff's expectation of privacy in the dressing room by suggesting that a patron had, on at least one occasion, entered the dressing room. (Defendants' Combined Memo at § 16 and p. 10.) There is no evidence, however, to support an assertion that patrons have ever been *permitted* to enter the dressing room, the standard established by the Ordinance for determining which areas of a sexually-oriented business are subject to police inspection. Indeed, the affidavit evidence Defendants cite in support of this argument indicates that the occupants of the dressing room refused to admit a customer who attempted to enter the room. (Bevan Deposition at 42–43.) The affidavits of the owner of American Bush indicate that the Club's policy was to remove customers who attempted to enter the dressing room: "[C]ustomers are never allowed,

under any circumstances, in the dressing room. If, on very rare occasion [sic], someone has tried to enter, they have been quickly removed." (Second Affidavit of Hal Cannon at ¶ 7.)

8. Defendants' argument that the constitutionality of the statute is relevant to Plaintiff's assertion of liability against the city of South Salt Lake is rendered moot by the Court's dismissal of South Salt Lake City as a defendant in its January 13, 2004 Order. The language of the Ordinance, and the function a valid ordinance must serve if it is to pass constitutional muster, remain relevant, however, both to the issue of whether there was a reasonable expectation of privacy in the dressing room and to whether qualified immunity applies.

Defendants maintain that Plaintiff could not manifest a subjective expectation of privacy in the dressing room because the room was under constant video surveillance, and because the room was sometimes entered by persons other than dancers and used for purposes other than changing clothes. Plaintiff's deposition testimony demonstrates, according to Defendants, that

> [s]he knew she was under the watchful eye of a security camera that recorded her every move. She admits that the club's managers, dancers, disc jockeys, bartenders, hired photographers, and sometimes even patrons would enter the dressing room. She admits that other dancers would use the dressing rooms as a marketplace to sell clothing. These undisputed facts show that Ms. Bevan should have expected any number of people to walk into the dressing room without knocking while she was sitting there.

(Defendants' Combined Memo at 10.) The fact that other dancers used the room is insignificant; the suggestion that patrons entered the dressing room is inaccurate. That other dancers used a dancers' dressing room hardly undermines a particular dancer's expectation of privacy in the room. The single reference in Plaintiff's Deposition to a patron attempting to enter the dressing room tends to reinforce rather than diminish Plaintiff's expectation of privacy, since the patron's efforts met with spirited resistance and were ultimately rebuffed. (Bevan Deposition at 42–43.) While Plaintiff does refer to disc jockeys and managerial staff entering the room, Defendants have not cited to any evidence in Plaintiff's Deposition indicating that those entries took place under normal conditions; managers or disc jockeys entered the dressing room only if a dancer was "late to stage" or in some sort of danger. (Id. at 44–45.) The bartenders who entered the room appear from Plaintiff's de-

position testimony to have been women, who used the room to change into the "extravagant clothing" no doubt suitable for tending bar at American Bush. (Id. at 109.) Plaintiff's testimony also makes reference to photo shoots connected with the web site operated by the President and Chief Executive Officer of American Bush. While these photo shoots appear to be less connected to the regular business of American Bush than the other activities cited by Defendants, discrete, permissive, and anomalous entries by photographers are insufficient to defeat the dancers' reasonable expectation of privacy in the dressing room. The fact that dancers sometimes sold clothing in the dressing room is also insufficient to defeat the dancers' expectation of privacy, particularly since Defendants have offered no case law in support of the proposition that there can be no reasonable expectation of privacy in an area used for multiple purposes, only some of which are ordinarily considered to be private. In any event, Plaintiff's deposition testimony is clear on the point that the "majority" of the activities carried on in the dressing room consists of dancers changing clothes (Id. at 110), which supports a finding that the Plaintiff had a subjective expectation of privacy in the dressing room.

Against these facts from Plaintiff's Deposition, Defendants set the presence of the video camera, which looms large in Defendants' arguments concerning the want of a reasonable expectation of privacy in the dressing room. Video camera surveillance appears, in Defendants' formulation, to undermine the subsistence of both a subjective and objective expectation of privacy. According to Defendants, Plaintiff's knowledge of the video camera is relevant to her subjective expectation of privacy: because Plaintiff was aware of the camera and implicitly consented to its presence when she failed to obstruct the

video camera lens, "neither she nor the persons in the room present with her would have reasonable expectations of privacy." (Defendants' Reply Memo ISO Motion for Summary Judgment at 5.) Defendants cite in support of this proposition case law from the Sixth, Eighth, and Ninth Circuit Courts of Appeal, all holding that when an informant consents to video surveillance, someone with the informant in a hotel room has no reasonable expectation of privacy. (Defendants' Reply Memo ISO Motion for Summary Judgment at 5.) These cases address the expectations of persons other than those who have consented to the surveillance, and whose criminal activities are being recorded by the police, and are not particularly apposite to the case before this Court.[9]

That defendants in a criminal case may not assert a reasonable expectation of privacy when their interactions with informants are taped for law-enforcement purposes does not answer the question of whether an employee in a dressing room may still assert a reasonable expectation of privacy from police intrusion in a room taped by her employers in order to ensure her safety. The affidavit of the Club's President and Chief Executive Officer indicates the surveillance of the dressing room is motivated by a desire to protect the dancers: "the premises are monitored by security cameras for the safety of [the] employees only. Tapes are kept for only

24 hours, and then destroyed unless the safety of employees is in question." (Second Affidavit of Hal Cannon at ¶ 9.) Plaintiff's subjective understanding accords with that of the Club's management: the purpose of the camera in the dressing room was "security also, safety." (Bevan Deposition at 42.)

Because the videotaping by the Club's management in the case before this Court was motivated by very different concerns than those which animated the law enforcement officers in the cases cited by Defendants, the Court must, in order to accept Defendants' arguments that the fact of videotaping is sufficient to destroy the reasonable expectation of privacy, disregard the reasons for which videotaping is undertaken and by whom. In their discussion of qualified immunity, Defendants cite additional case law they suggest supports the proposition that there can be no reasonable expectation of privacy in an area subject to video surveillance. In *Thompson v. Johnson County Community College*, a district court held that an employer's action in videotaping an employee locker room did not violate those employees' reasonable expectation of privacy. 930 F.Supp. 501 (D.Kan.1996). *Vega–Rodriguez v. Puerto Rico Telephone Company*, also cited by Defendants, similarly held that employees could not assert a reasonable expectation of privacy that

**9.** In *U.S. v. Yang*, the Sixth Circuit Court of Appeals held that because an informant had given his consent to have his hotel room taped, and because defendants had come to the room voluntarily and spoken to the informant voluntarily, defendants had "relinquished any 'justifiable' expectation of privacy." 281 F.3d 534, 548 (6th Cir.2002) (citations omitted). In *United States v. Corona–Chavez*, the Eighth Circuit Court of Appeals came to a similar conclusion. 328 F.3d 974 (8th Cir.2003). The Ninth Circuit as well, in *United States v. Nerber*, found that defendants had no reasonable expecta-

tion of privacy from videotaping to which an informant had consented when they were in the informant's hotel room. 222 F.3d 597 (9th Cir.2000). If Plaintiff in the case before this Court had consented to the videotaping only to have Defendants come to the room to undertake some illegal activity, and if Defendants had then objected to the introduction of the videotapes into evidence against them, these cases might be persuasive. On the facts of this case, however, their relevance is, at the very, very best, tangential.

would render impermissible an employer's action in videotaping the workplace. 110 F.3d 174 (1st Cir.1997). Both cases might be persuasive authority if the case before this Court involved an assertion by Plaintiff that the decision by American Bush to place a video camera in the dressing room violated some reasonable expectation of privacy she enjoyed in the room. Neither case, however, offers this Court significant guidance in answering the question of whether the fact that an employer videotapes a workplace area for safety purposes destroys an employee's reasonable expectation of privacy for all other purposes, including warrantless intrusions by the police.

Although *Vega–Rodriguez* and *Thompson* do not assist the Court in its inquiry into whether videotaping an area is sufficient to destroy any reasonable expectation of privacy in that area, they are instructive in the general sense that both courts examined a claim of a reasonable expectation of privacy in a workplace area. Both courts relied on the relatively public nature of the locations videotaped in justifying their rulings that employees in those locations did not enjoy a reasonable expectation of privacy.[10] In the case before this

Court, in contrast, the room in question is a private area, from which the public is excluded.

Even if the room is not rendered a public space as a result of its use by a variety of people for a variety of purposes, Defendants appear to suggest that the videotaping, without more, transforms the room into a place in which no reasonable expectation of privacy is possible. The videotaping of the room for safety purposes does not by itself, however, eliminate the possibility that a reasonable expectation of privacy exists for some other purposes. Images of the dressing room are transmitted from the dressing room to only two monitors, one located at the disc jockey's booth and the other in the manager's office. There is no evidence to contradict the statement of the president and Chief Executive Officer of American Bush that the recording is only visible at a "small monitor at the DJ booth, where it is blocked off from the view of others" and in his office, where access "is limited to himself and other management personnel as necessary." (Second Affidavit of Hal Cannon at ¶ 10.) Defendants argue that since "anyone with access to the images recorded by those cameras could see [Plaintiff] at

---

10. In *Vega–Rodriguez v. Puerto Rico Telephone Company,* the First Circuit Court of Appeals found that "[i]t is simply implausible to suggest that society would recognize as reasonable an employee's expectation of privacy against being viewed while toiling in the Center's open and undifferentiated work area." 110 F.3d 174, 180 (1st Cir.1997). The dressing room at American Bush, an enclosed space not generally visible, capable of being locked, and in fact found locked by Defendants a few days before the incident here at issue, is readily distinguishable from the open and undifferentiated work area of *Vega–Rodriguez.* The area subject to video surveillance by the employer in *Thompson v. Johnson County Community College* was also of a distinctly public nature that sets it apart from the dressing room in the case before this Court: "The security personnel locker area

was part of a storage room that also housed the College's heating and air-conditioning equipment. Additionally, the College did not limit access to this storage room. Security personnel and other college employees, including maintenance and service personnel, had *unfettered* access to this storage room." 930 F.Supp. 501, 507 (D.Kan.1996) (emphasis added). While male employees occasionally entered the dressing room at American Bush, their access was very far from unfettered. The President and Chief Executive Officer of American Bush indicated that male employees only enter the dressing room when necessary and then only under "strict guidelines enforced by management. At least one male employee has been disciplined for entering the dressing room unnecessarily." (Second Affidavit of Hal Cannon at ¶ 6.)

any time," Plaintiff could have no reasonable expectation of privacy in the dressing room. (Reply Memo ISO Defendants' Motion for Summary Judgment at 5.) While it is true that Plaintiff could have no reasonable expectation of privacy in the dressing room if the content of that expectation were that she would not be visible to the disc jockey or a manager, Defendants have neither offered argument nor cited any case law supporting the proposition that the fact that a person's activities were visible leads to the conclusion that that person has no expectation of privacy from police intrusions. If Plaintiff were to change clothes in her home without drawing the blinds, it seems unlikely that she would by that fact alone have relinquished any reasonable expectation of privacy in her home so that warrantless police searches would become permissible.

In addition to the distinguishable cases involving videotaping discussed above, Defendants offer a more general articulation of the factors giving rise to a reasonable expectation of privacy. The Eighth Circuit Court of Appeals in *United States v. McCaster* listed the factors to be considered in determining whether a reasonable expectation of privacy exists in a particular area. Relevant considerations include the claimant's possessory interest in the place searched or the things seized, the ability to exclude others, the claimant's use of precautions intended to maintain the privacy, and the claimant's possession of a key. 193 F.3d 930 (8th Cir.1999). Defendants contend that Plaintiff's claim does not satisfy any of these tests: Plaintiff could not exclude others from the dressing room because the room was under constant video surveillance; she did not take precautions aimed at maintaining the privacy of the dressing room, such as locking the door or blocking the video camera; and

she did not have a key to the dressing room.[11] (Defendants' Reply ISO Motion for Summary Judgment at 5.)

Defendants' use of the *McCaster* factors is problematic on both a legal and a factual level. As a legal matter, there is no indication in *McCaster* that the factors it enumerates are intended to be exhaustive; a finding that none of the factors had been satisfied would not necessarily end the inquiry into whether a reasonable expectation of privacy existed. For instance, had the facts before the *McCaster* Court been more similar to those here at issue, that Court might have considered whether an employer creates a reasonable expectation of privacy by setting aside a room for activities, such as dressing, generally considered private. Confronted with facts similar to those before this Court, the *McCaster* Court might have also considered whether the deliberate exclusion of members of the public is pertinent to whether a reasonable expectation of privacy exists in an area. Moreover, even if the *McCaster* list were exhaustive, Plaintiff's actions conform more closely to the requirements of *McCaster* than Defendants suggest. If Plaintiff did not lock the door, neither did she leave it open. While Plaintiff may not have had a key to the door of the dressing room, a closed door, as well as a locked one, indicates an occupant's intention of preserving private space. Indeed, Defendant Smartt encountered a locked door when she attempted to enter the same dressing room while conducting a warrantless administrative inspection at American Bush on June 27, 2003, several days prior to the July 1 incident at issue in this case.

The legal authority on which Defendants rely does not ultimately support their position that there was no subjective-

---

**11.** Defendants do not mention the first *McCaster* factor, but Plaintiff does not suggest that she had a possessory interest in the dressing room.

ly or objectively reasonable expectation of privacy in the dressing room. Indeed, the opposite conclusion, that there was a reasonable expectation of privacy in the dressing room, finds support in the very ordinance on which Defendants rely to justify warrantless administrative searches of sexually-oriented businesses. The Ordinance authorizes searches of those areas in a sexually-oriented business in which patrons are permitted, thereby creating an expectation that other areas of a sexually-oriented business will be free from warrantless searches made pursuant to the Ordinance. South Salt Lake Code § 5.56.310(h). One of the requirements a legislative scheme authorizing warrantless administrative searches must fulfill in order to pass constitutional muster is that it provide the owner of the premises with the same certainty as a warrant: the statute must define the scope of the search and limit the discretion of the officers performing the search. *Burger*, 482 U.S. at 703, 107 S.Ct. 2636. It is reasonable to infer that if the statute itself puts owners (and their employees) on notice that certain areas of a business are subject to warrantless searches, then the statute simultaneously creates a reasonable expectation that other areas will not be exposed to police intrusion.[12]

*Qualified Immunity*

■ Government officials enjoy qualified immunity from suit arising from the performance of discretionary functions unless their actions violate a constitutional right and that right was clearly established at the time of the violation. *Saucier v. Katz*, 533 U.S. 194, 201–02, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If it would be clear to a reasonable official that his conduct would violate the law in the particular circumstances confronting that official, then qualified immunity is not available. *Id.* Defendants assert that there is no clearly established law that would have put Defendants on notice that "an officer can[not] follow a dancer into an unlocked strip club dressing room that is under video surveillance." (Defendants' Combined Memo at 12.) The articulation of the legal issue with this degree of specificity obscures the more general legal principle involved. The law that, absent certain exceptions inapplicable here, police officers may not without a warrant enter an area in which there is a reasonable expectation of privacy has been clearly established for some time. *See Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *California v. Greenwood*, 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988).

In addition to the general warrant requirement, of which Defendants were certainly aware, there were at the time of the search both factual and legal circumstances that would have put a reasonable officer on notice that entering the dressing room without a warrant would put that officer on dubious legal footing. These same officers had attempted to conduct this same search several days before the search in question and were at that time

---

12. The single factual circumstance that might (or might not) serve to defeat Plaintiff's claim that her Fourth Amendment rights were violated has been neither briefed nor argued by Defendants. On the day in question, Officer Smartt attempted to question another dancer in order to determine whether the dancer had the work card required by the Ordinance for employees of sexually-oriented businesses. The dancer did not wait when Officer Smartt announced "Police," but proceeded into the dressing room, where Officer Smartt followed her and where the altercation leading to Plaintiff's arrest took place. Defendant has not argued that a police officer may, without a warrant and under non-exigent circumstances, follow a person she is entitled to question into an area in which there is a reasonable expectation of privacy. The Court declines to address an argument which, because not adequately argued or briefed, is not squarely before it.

confronted with a locked door. That locked door, in addition to the obvious nature of the room, should have put Defendants on notice that the dressing room was an area in which there was an expectation of privacy.[13] Moreover, it is reasonable to impute to Defendants familiarity with the Ordinance pursuant to which they were conducting the search. That Ordinance explicitly limits the area in which searches are permissible to those in which patrons are permitted, and Defendants had no reason to suppose, nor would it be reasonable to suppose, given the nature of the room and the previously locked door, that patrons were permitted in the dressing room. These factual and legal considerations would have put reasonable officers on notice that a warrantless search of the dressing room exceeded the authority given to them by the Ordinance. As discussed above, the Court has already found the constitutional violation required under the rule in *Saucier*; this finding, combined with the finding that there was clearly established law to put Defendants on notice that their actions were unconstitutional, is fatal to a claim of qualified immunity.

*Attorneys' Fees*

Defendants suggest that an award of attorneys' fees against Plaintiff is appropriate because this law suit was brought "based on an improper motive, and with nary a single fact issue justifying a trial." (Reply Memo ISO Defendants' Motion for Summary Judgment at 11.) This Court's grant of Plaintiff's Motion for Summary Judgment as to liability compels its denial of Defendants' request for attorneys' fees.

CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment is GRANTED, and the Court finds that Defendants do not enjoy qualified immunity. Defendants' Motion for Summary Judgment as to Defendants Smartt and Richman is accordingly DENIED. Defendants' Motion for Attorneys' Fees is DENIED.

**IT IS SO ORDERED**

---

**13.** Although during the June 27, 2002 search the door was unlocked after the police announced their presence and requested entry, Defendants have presented to the Court no case law suggesting that a single consensual entry is equivalent to an abandonment of any expectation of privacy in that location by any and all future occupants.