BARTLETT et al., Appellants,

v.

DANIEL DRAKE MEMORIAL HOSPITAL et al., Appellees;
Hamilton County Board of Commissioners, Defendant.

[Cite as *Bartlett v. Daniel Drake Mem. Hosp.* (1991), 75 Ohio App.3d 334.]

Court of Appeals of Ohio,
Hamilton County.

No. C–900506.

Decided Aug. 7, 1991.

*Jerald E. Condit,* for appellants.

*Dinsmore & Shohl, Michael W. Hawkins* and *Kathleen Kernan Bedree,* for appellees.

*Per Curiam.*

The appellants, Gwen and Charles Bartlett, were both employed at defendant-appellee Daniel Drake Memorial Hospital ("Drake Hospital") when the incident giving rise to the lawsuit under review in this appeal occurred.

On March 13, 1986, Gwen was working at Drake Hospital as a nursing technician. As Gwen attempted to move a patient with a mechanical device known as a "Hoyer lift," the patient dropped to the floor and sustained serious head injuries. According to Drake Hospital policy, operation of the lift required two persons. Gwen, however, had used the device without assistance.

As a result of this incident, Gwen was suspended from employment without pay. A predisciplinary conference was conducted, and based upon the testimony adduced, the hearing officer recommended suspending Gwen for five days and transferring her to a department where she would not be in direct contact with patients. The hospital's chief executive officer adopted the recommendation and transferred Gwen to a housekeeping position.[1] Pursuant to hospital policy Gwen appealed to arbitration and the appeal was ultimately denied.[2]

In August 1986, appellants filed a fourteen-count complaint against the named defendants, alleging, *inter alia*, defamation, breach of contract, intentional and negligent infliction of emotional distress, and loss of companionship. In November 1986 Gwen resigned from employment at Drake Hospital, and in April 1987, appellants added a fifteenth claim against the defendants, which alleged that Gwen was constructively discharged from employment at Drake Hospital due to intolerable working conditions. Defendants Drake Hospital, Jan C. Taylor, Delores McCary, Robert Tamm and the Board of Trustees of Drake Hospital successfully moved for summary judgment on all fifteen claims. Because the allegations of liability against the remaining defendants, the members of the Board of Hamilton County Commissioners, were derivative in nature, judgment was likewise rendered in their favor. Appellants now present four assignments of error for our review.

The first assignment contends that the trial court should not have granted summary judgment to the appellees on the claim alleging breach of contract by constructive discharge. Appellants maintain that Drake Hospital's personnel manual constituted an implied employment contract which created certain

---

1. The five-day suspension was subsequently reduced to three days.

2. Gwen appealed certain aspects of the arbitration to the Hamilton County Common Pleas Court, where the arbitration decision was sustained.

"termination rights." Appellants further contend that the alleged contract was breached when Drake Hospital "applied techniques of harassment for purposes of coercing [Gwen] into an involuntary resignation." This assignment is not well taken.

It is undisputed that Gwen was classified as an employee at will where, unless otherwise agreed, either party may terminate the employment relationship for any reason not contrary to law. *Fawcett v. C.G. Murphy & Co.* (1976), 46 Ohio St.2d 245, 75 O.O.2d 291, 348 N.E.2d 144. In *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 19 OBR 261, 483 N.E.2d 150, the Ohio Supreme Court established two narrow exceptions to an employer's ability to discharge employees freely under employment-at-will contracts. These two exceptions involve the doctrine of promissory estoppel and the creation of an implied contract. Undisturbed by the holding in *Mers* is the generally accepted conclusion that items such as employer handbooks, company policy or oral representations do not create employee rights which alter the "termination for any reason" terms for discharge under the at-will situation unless the parties have a "meeting of the minds" indicating that such items are to be considered valid contracts altering the terms for discharge. *Turner v. SPS Technologies, Inc.* (June 4, 1987), Cuyahoga App. No. 51945, unreported, 1987 WL 11967. While personnel manuals may be important in establishing the terms and conditions of employment, absent the necessary mutual assent or meeting of the minds by the employer and employee to establish employment-termination rights, handbooks or other supplementary manuals or materials merely constitute unilateral statements of company rules and regulations. *Turner v. SPS Technologies Inc., supra; Isgro v. Deaconness Hosp.* (Oct. 30, 1980), Cuyahoga App. No. 41966, unreported.

In the case *sub judice*, we conclude that no contractual intent existed between the parties to modify the original at-will contract of employment. Appellants' reliance on Drake Hospital's "Employee Discipline" and "Predisciplinary Conference and Appeal Procedure" materials is misplaced. These policies are but mere unilateral statements of the hospital's procedure for the invocation of disciplinary action against an employee, and do not create an implied employment agreement between the parties. Therefore, appellants did not possess a cause of action against the appellees for breach of contract predicated upon the provisions of Drake Hospital's personnel manual. Consequently, there was no breach of contract or constructive discharge as alleged by appellants, and the trial court properly granted summary judgment to appellees on this claim.

The second assignment of error attacks the trial court's grant of summary judgment to appellees on appellants' claims of intentional and negligent infliction of serious emotional distress.

 Appellants' claim of negligent infliction of emotional distress must fail. A claim arising under this tort assumes that a bystander or witness to a sudden, negligently caused event is traumatized by its emotionally distressing occurrence. *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 6 OBR 114, 451 N.E.2d 759; *Schultz v. Barberton Glass Co.* (1983), 4 Ohio St.3d 131, 4 Ohio St.3d 131, 447 N.E.2d 109. Appellants were not traumatized bystanders or witnesses to a sudden, negligently caused occurrence and therefore have no factual basis to assert a claim for negligent infliction of emotional distress. See *Mason v. United States Fidelity and Guaranty Co.* (1990), 69 Ohio App.3d 309, 590 N.E.2d 799.

 Appellants' claim of intentional infliction of emotional distress is likewise groundless. In *Yeager v. Local Union 20, Teamsters* (1983), 6 Ohio St.3d 369, 374–375, 6 OBR 421, 425–426, 453 N.E.2d 666, 671, the Ohio Supreme Court set forth the standard recognized in Ohio with regard to the tort of intentional infliction of serious emotional distress. The court, quoting Restatement of Law 2d, Torts (1965) 71, Section 46(1), pronounced:

" 'One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress * * *.'

" * * *

" ' * * * Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' "

As a matter of law, the conduct must amount to more than mere insults, indignities, threats, annoyances, petty aggressions or other trivialities. *Id.; Mason v. United States Fid. & Guar. Co., supra.*

 In the instant action, when the allegedly tortious conduct exhibited by Gwen's supervisors and fellow employees at Drake Hospital is viewed in the light most favorable to appellants, it does not, as a matter of law, constitute the extreme and outrageous conduct necessary for a *prima facie* case of intentional infliction of emotional distress. See *Mason v. United States Fid. & Guar. Co., supra.* Thus, in light of the state of this record, we conclude that the trial court correctly granted summary judgment to appellees on this claim.

Appellants contend under the third assignment that the trial court erred by granting appellees' summary-judgment motion on the defamation claim against nurse Delores McCary.

The parties agree that a qualified privilege attaches to the statements made by McCary at the predisciplinary conference. See *Evely v. Carlon Co., Div. of Indian Head, Inc.* (1983), 4 Ohio St.3d 163, 4 OBR 404, 447 N.E.2d 1290. In order to successfully assert a defamation claim against one whose statements are entitled to a qualified privilege, a plaintiff must show that in making the statements the "defendant was moved by actual malice, such as ill will, spite, grudge or some ulterior motive." *Hahn v. Kotten* (1975), 43 Ohio St.2d 237, 248, 72 O.O.2d 134, 141, 331 N.E.2d 713, 721.

In the case *sub judice* Gwen agreed in her deposition that McCary was "simply making an effort to explain what she thought happened or as she viewed [the incident]." McCary stated at the predisciplinary conference that upon entering the patient's room within seconds after the accident, she observed that the base of the lift was closed (in contravention of proper operating procedures) and that the patient's legs were sprawled across the base of the device. Thus, McCary's statements concerning the lift's positioning were based on her actual observance of the accident scene, and were not, contrary to appellants' contention, based on a "reckless disregard for the truth." Additionally, we conclude that the record before us does not demonstrate any indicia of actual malice within the meaning of *Hahn, supra.* Accordingly, we overrule the third assignment of error.

The final assignment of error alleges that appellee Charles Bartlett was defamed by Drake Hospital's issuance of a written warning to cease his harassment of fellow employees regarding his attempt to gather information for use at his wife's predisciplinary hearing. Appellants maintain that the trial court erred in granting summary judgment to appellees on this claim because the written statement would be understood by those to whom it was published as accusing Charles of a crime and that the statement was published with actual malice. These contentions are meritless.

Charles conceded that he was the sole recipient of the intradepartmental communication at issue. Thus, there was no publication to a third person, a requirement for the establishment of a *prima facie* case of defamation. See *Hahn v. Kotten, supra.* Moreover, the written warning was issued in the employment context, and, therefore, as the parties agree, a qualified privilege attached. Accordingly, as with Gwen's defamation claim discussed in the previous assignment, appellants bore the burden of proving actual malice in order to defeat the qualified privilege. No evidence of actual

malice as the term is defined in *Hahn, supra*, was adduced; therefore, the trial court's action with respect to this claim was proper.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

SHANNON, P.J., DOAN and KLUSMEIER, JJ., concur.