DECISION AND JUDGMENT
{¶ 1} Plaintiffs-appellants, Patricia Parker and Horizons Computer Training and Employability Center, LLC ("Horizons"), appeal the March 25, 2008 judgment of the Lucas County Court of Common Pleas which granted summary judgment to defendant-appellee, Linda L. Rice, on a tortious interference with contract claim. Because we find that no genuine issues of material fact remain, we affirm the trial court's judgment. *Page 2 
 {¶ 2} The following facts were adduced from the pleadings, depositions, and affidavits of the parties. Horizons was formed in 1994, and is wholly owned by appellant, Patricia Parker. During the relevant period, Horizons offered occupational skills training and employment services to clients of the Lucas County Department of Job and Family Services ("LCDJFS".) In June 2004, Horizons and the LCDJFS entered into two contracts for occupational skills training. For the first time, Horizons offered a medical billing and coding class. Parker hired two instructors through a newspaper advertisement: appellee, to teach the day class, and Gloria Wright, to teach the night class. Parker had also recently hired Claudia Dodds as an employment specialist. Dodds was to assist Horizons' clients in obtaining employment.
 {¶ 3} With regard to the medical billing and coding class, the LCDJFS contract provided that Horizons would be paid $3,200 per student and $1,000 per job placement (a minimum of 35 hours per week and $6.25 per hour) within 60 days of completion of the course. The contract required that Horizons submit grade and attendance information. The contract also indicated that LCDJFS would monitor provider compliance.
 {¶ 4} Appellee began her employment in early July and, approximately one week later, her class began. According to appellee, she received no training from Parker and developed her own curriculum. Appellee was terminated on September 29, 2004, two days prior to the end of her class. The letter she received stated that the reasons for her termination were: "Did not satisfy the 90 day probation period" and "Budget cuts." *Page 3 
 {¶ 5} Prior to her termination, appellee became involved in an alleged dispute between a night-class student, C.L.[1], and Parker. C.L. was ultimately moved to appellee's class; soon thereafter, she was terminated from the program. C.L. reported her dissatisfaction with the program to her caseworker and LCDJFS began an investigation into Horizons' performance under the contract.
 {¶ 6} LCDJFS contract specialist, Esther Glover-Grant, interviewed Horizons' staff members, including appellee; Glover-Grant also interviewed several students in the fall 2004 medical coding and billing class. On October 7, 2004, following a meeting with LCDJFS officials and a county assistant prosecuting attorney, appellee sent a letter to LCDJFS outlining her concerns with Horizons and Parker. Appellee claimed that: (1) appellee received no guidance from Parker as to how to teach the medical coding and billing class; (2) the MediSoft software had not been registered and could not be used; (3) Parker threatened to have the LCDJFS clients' assistance money pulled if they did not fully cooperate; (4) Parker referred to the students as "welfare moms"; (5) Parker frequently lost control of herself in front of the students; (6) Parker told students that water was a privilege and she required them to pay for it; (7) students who never attended a job placement class were given money to sign an attendance sheet as if they had attended; and (8) she was told that Parker had falsified attendance records *Page 4 
 {¶ 7} In December 2004, at the conclusion of the LCDJFS investigation, LCDJFS determined that the class was not an optimal educational experience for its clients and temporarily suspended its contract with Horizons. Horizons' contract was reinstated for spring 2005. Thereafter, students in the spring medical coding and billing class complained to LCDJFS about the program. LCDJFS ultimately terminated its contract with Horizons.
 {¶ 8} On March 16, 2007, appellants commenced the instant action. Appellants alleged that appellee interfered with Horizons' business contract with LCDJFS by making untrue statements to LCDJFS (including those in the October 7, 2004 letter as set forth above) and that appellee informed students that an instructor was not qualified. Appellants claimed that as a result of appellee's actions, Horizons received "considerably less referrals" resulting in "substantial lost revenues." Appellee filed an answer and a counterclaim for back pay allegedly owed.
 {¶ 9} On December 27, 2007, appellee filed her motion for summary judgment arguing that appellants failed to establish tortious interference with a business contract because appellee was a party to the contract or relationship; appellee's statements were privileged; appellee's motive for the statements would preclude her from liability; and that appellee's statements were not the proximate cause of the alleged harm. In support of her motion, appellee relied on the affidavits of appellee, Esther Glover-Grant, C.L., Claudia Dodds, and R.L. (a student in the spring 2005 medical billing/coding class.) *Page 5 
Appellee also relied on Parker's deposition and the service provider contract between Horizons and LCDJFS.
 {¶ 10} On January 28, 2008, appellants filed their memorandum in opposition. Appellants argued that because appellee, an employee, was acting against the interests of Horizons she was not shielded from liability. Appellants further argued that because appellee's communications were not made in good faith, they were not privileged; alternatively, appellants alleged that appellee acted with actual malice. Appellants supported their memorandum with the affidavits of Parker and students E.M. and M.S.; and the depositions of Parker, appellee, and student, L.K.
 {¶ 11} On March 25, 2008, the trial court granted appellee's motion for summary judgment. The court found that appellee's statements were privileged and that appellants failed to show that the statements were maliciously made. This appeal followed.
 {¶ 12} On appeal, appellants raise the following assignment of error:
 {¶ 13} "The trial court erred when it granted appellee's motion for summary judgment and dismissed appellants' complaint."
 {¶ 14} In their sole assignment of error, appellants contend that the trial court erred when it granted appellee's motion for summary judgment based on its conclusion that appellee's statements were privileged and were not maliciously made. In reaching its decision, appellants argue that the trial court failed to consider "an abundance of evidence that appellee had made false statements which she knew for a fact to be false." *Page 6 
 {¶ 15} We first note that appellate review of a trial court's grant of summary judgment is de novo. Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105, 1996-Ohio-336. Accordingly, we review the trial court's grant of summary judgment independently and without deference to the trial court's determination. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711. Summary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66; Civ. R. 56(C). The burden of showing that no genuine issue of material fact exists falls upon the party who moves for summary judgment. Dresher v. Burt, 75 Ohio St.3d 280, 294, 1996-Ohio-107. However, once the movant supports his or her motion with appropriate evidentiary materials, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ. R. 56(E).
 {¶ 16} Appellants' complaint alleged that appellee tortiously interfered with their business relationship with LCDJFS. In order to establish tortuous interference with a business relationship or contract, a plaintiff must demonstrate:
 {¶ 17} "(1) a business relationship or contract; (2) the wrongdoer's knowledge of the relationship or contract; (3) the wrongdoer's intentional and improper action taken to prevent a contract formation, procure a contractual breach, or terminate a business *Page 7 
relationship; (4) a lack of privilege; and (5) resulting damages."Brookeside Ambulance, Inc. v. Walker Ambulance Serv. (1996),112 Ohio App.3d 150, 155-156, citing Kenty v. Transamerica Premium Ins. Co.,72 Ohio St.3d 415, 1995-Ohio-61 and A B-Abell Elevator Co. v.Columbus/Cent. Ohio Bldg. Constr. Trades Council, 73 Ohio St.3d 1,1995-Ohio-66.
 {¶ 18} The parties do not dispute that, under the first element, Horizons and LCDJFS were parties to a business relationship or contract and that, under the second element, appellee was aware of the business relationship or contract. The parties dispute whether appellants were precluded from asserting the claim because the wrongdoer must be a non-party to the contract and appellee, as an employee of Horizons, did not qualify. The parties also vehemently disputed whether appellee's communications to LCDJFS were privileged. As did the trial court, we will first address the element of privilege.
 {¶ 19} A communication is conditionally privileged where such communication is:
 {¶ 20} "`made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which, without this privilege, would be actionable, and although the duty is not a legal one, but only a moral or social duty of imperfect obligation. The essential elements of a conditionally privileged communication may accordingly be enumerated as good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only. The privilege arises from *Page 8 
the necessity of full and unrestricted communication concerning a matter in which the parties have an interest or duty, and is not restricted within any narrow limits.'" Hahn v. Kotten (1975), 43 Ohio St.2d 237,246, quoting West v. People's Banking Trust Co. (1967), 14 Ohio App.2d. 69, 72.
 {¶ 21} The concept of qualified or conditional privilege is longstanding and "is based upon public policy and the need to protect the publication of a communication made in good faith." Jacobs v.Frank (1991), 60 Ohio St.3d 111, 114. Qualified privilege applies in numerous situations where society's interest outweighs the interest of those damaged. A B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg Constr. Trades Council, 73 Ohio St.3d at 8.
 {¶ 22} "One type of interest protected by a qualified privilege is the public interest. The `public interest' privilege `involves communications made to those who may be expected to take official action of some kind for the protection of some interest of the public' Prosser Keeton, The Law of Torts, supra, at 830, Section 115. See, also, 3 Restatement of the Law 2d, Torts (1977) 281, Section 598." Id. at 9.
 {¶ 23} A qualified privilege can be defeated only by clear and convincing evidence of actual malice on the part of defendant.Bartlett v. Daniel Drake Mem. Hosp. (1991), 75 Ohio App.3d 334, 340. "Actual malice" means "acting with reckless disregard as to [a statement's] truth or falsity." Jacobs v. Frank, supra, at 116. Lack of innocent motive is not enough to establish actual malice. A B AbellElevator Co., Inc. v. Columbus/Cent. Ohio Bldg. Const, supra, at 11. "Reckless disregard" is shown by presenting *Page 9 
"sufficient evidence to permit a finding that the defendant had serious doubts as to the truth of his publication." Id. at 12.
 {¶ 24} A summary of appellants' arguments are found in Parker's deposition and affidavit. Parker stated that she terminated appellee because she was not an adequate instructor. Appellee had sub par computer skills and she did not follow instructions, including reporting student absences. Parker also claimed that appellee was insubordinate by informing the students that they should have been permitted to take certain books home; giving the student's her home telephone number; and encouraging the students to complain to their caseworkers.
 {¶ 25} With regard to appellee's allegedly false statements, Parker stated that she spent approximately three to four hours per day training appellee during her first week of work. Parker indicated that appellee would not have first-hand knowledge of whether Gloria Wright, the night instructor, used foul language. Parker also testified that the MediSoft software had been registered and the night class had been using it; Parker stated that appellee's lack of computer skills was the problem. Parker denied either threatening students with regard to their government assistance or calling them "welfare moms."
 {¶ 26} Parker admitted that she did not know who initially got Esther Glover-Grant involved in an investigation of Horizons, but she was aware that student, C.L. complained to Glover-Grant. Parker was also aware that Claudia Dodds made similar allegations to LCDJFS. *Page 10 
 {¶ 27} Parker claimed that appellee and Dodds "put their heads together determined to destroy me." Parker speculated that appellee's and Dodds' motivation was to get the grant money from LCDJFS and run the class themselves.
 {¶ 28} Parker testified that in November 2004, LCDJFS recouped $20,000 from Parker; ultimately $16,000 was retuned. Parker admitted that one placement was improper. Parker alleged that due directly to the statements of appellee and Dodds, her relationship with LCDJFS was ruined.
 {¶ 29} Finally, Parker was questioned about a letter signed by all the students in the spring 2005 medical coding and billing class. The letter contained numerous complaints about the class and Horizons. Parker contended that Dodds, who was still working for Horizons, was "influencing" the students. Parker denied all the allegations in the letter. Appellants also presented the deposition of student, L.K., who testified that she did not know what she was signing when she signed the letter. Appellants also presented the affidavits of students E.M. (who signed the letter but made no reference to it in her affidavit) and M.S. who was in appellee's class and stated that appellee told the students that they should take their books home and not bring them back and that appellee "told the class that she was going to try to get Pat put out of business."
 {¶ 30} Appellee, in her deposition, testified that just a few weeks after being hired, she learned from Parker that Horizons was under investigation by the county due to "paperwork" issues. Appellee testified that her first contact with LCDJFS was shortly after the incident involving student, C.L., and Parker. Appellee could not remember *Page 11 
whether she was told to call Esther Glover-Grant or if Glover-Grant had contacted her. Their first telephone conversation was solely about the incident. Subsequently, Glover-Grant called appellee several times at her home. According to appellee, the conversations turned to complaints that LCDJFS was receiving from Horizons' students. Appellee denied encouraging the students to complain to LCDJFS.
 {¶ 31} Appellee testified that Glover-Grant asked her if there were any problems in her class and appellee stated "yes." Specifically, appellee complained about students not being permitted to take textbooks home; the computer system not being up-to-date; foul language being used by Gloria Wright, the night instructor; and students having difficulty getting placed in jobs due to insufficient training. Appellee denied ever speaking negatively about Parker to her students.
 {¶ 32} Appellee testified that when she met with LCDJFS officials and a Lucas County Assistant Prosecuting Attorney they questioned her based upon student complaints they had received. Appellee relayed the same concerns she had expressed to Glover-Grant. At the conclusion of the meeting they requested that appellee put the information she relayed in writing. Appellee then sent the October 7, 2004 letter which was outlined, infra. In her affidavit, appellee stated that at the time she made statements to Glover-Grant and the assistant prosecuting attorney, she had a good faith belief in the veracity of the statements. Appellee further stated that she felt that she had a duty to answer the questions posed to her by public officials and that, as stated in her October 7, *Page 12 
2004 letter, she also had an ethical obligation to ensure that "all procedures are followed according to the law. * * *."
 {¶ 33} Based on the foregoing and upon application of the relevant case law, we must conclude that because appellee's statements were made in good faith and during the course of LCDJFS' investigation of Horizons they were privileged. Appellee's first contact with LCDJFS occurred after a complaint was received from student, C.L. Appellee's first conversation with Esther Glover-Grant solely related to the altercation between C.L. and Parker. Thereafter, Glover-Grant contacted appellee and questioned her further with regard to issues with Parker.
 {¶ 34} Because we have concluded that appellee's statements were privileged, appellants can only survive summary judgment by demonstrating that the statements were maliciously made. Bartlett v.Daniel Drake Mem. Hosp., 75 Ohio App.3d at 340. It is insufficient to merely allege that appellee had an improper motive. A B Abell ElevatorCo., Inc. v. Columbus/Cent. Ohio Bldg. Const., 73 Ohio St.3d at 11.
 {¶ 35} Upon review, we find that the evidence presented by appellants was insufficient to establish actual malice. Parker's belief that appellee wanted to destroy her business and attempt to get her own contract with LCDJFS was merely speculation as to motive. M.S.'s affidavit stating that appellee told the class she was going to put Parker out of business again goes to a possible motive for appellee's statements to LCDJFS, but it does not contradict their veracity. *Page 13 
 {¶ 36} Based on our finding that appellee's statements were privileged, we need not address the remaining elements of tortious interference with a business relationship or contract. Appellants' assignment of error is not well-taken.
 {¶ 37} On consideration whereof, we find that substantial justice was done the party complaining and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Peter M. Handwork, J., Mark L. Pietrykowski, J., Arlene Singer, J., concur.
[1] Pursuant to R.C. 5101.27(A): "no * * * government entity shall * * * disclose * * * any information regarding a public assistance recipient for any purpose not directly connected with the administration of a public assistance program." Thus, we will refer to LCDJFS' clients by their initials only. *Page 1