[Cite as *Mullins v. Ohio Bd. of Regents*, 2010-Ohio-545.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us



JADA L. MULLINS

Plaintiff

v.

OHIO BOARD OF REGENTS, et al.

Defendants
 Case No. 2006-07023

Judge Joseph T. Clark

DECISION



{¶ 1}  Plaintiff brought this action alleging wrongful termination in violation of public policy, defamation, invasion of privacy, and "harassment."[1]  The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶ 2}  Plaintiff's claims arise as a result of the termination of her employment with the Ohio Board of Regents (OBR) on November 12, 2004.  On September 20, 1999, plaintiff began her employment with OBR and she was subsequently assigned as a secretary in the department of Educational Linkages and Access.  Plaintiff was a member of the Ohio Civil Service Employees Association, AFSCME, Local 11, AFL-CIO (union) which represented bargaining unit employees such as plaintiff.  Plaintiff's supervisor at the time was Jane Fullerton, OBR's Associate Vice Chancellor.

---

[1] Although plaintiff referred to a claim for racial discrimination in her post-trial brief, she did not allege discrimination in her complaint and no credible evidence was presented at trial to support such a claim.

{¶ 3} It is undisputed that plaintiff was a capable worker; however, during her term of employment with OBR, she received extensive counseling and discipline for tardiness. According to the evidence, in 2001, OBR agreed to adjust plaintiff's schedule to accommodate her efforts to obtain childcare. On November 27, 2002, Kristina Frost, OBR's Vice Chancellor for Operations, and Mary Harriel, OBR's Director of Human Resources, provided plaintiff with a memorandum entitled "Job Performance and Work Expectations." (Defendants' Exhibit W.) Plaintiff signed the memorandum which noted that "continued unprofessional behavior after receipt of these work expectations" would not be tolerated and would result in discipline.

{¶ 4} Harriel testified that she maintained a "discipline log" which documented actions taken by OBR in response to plaintiff's tardiness and unprofessional conduct. On May 8, 2003, plaintiff received a notice of "pattern abuse" of leave which showed that plaintiff had been late or absent 13 of 31 working days during the period from March 6, to April 17, 2003. OBR allowed adjustments to plaintiff's starting time between June 25, and July 25, 2003; however, in August 2003, plaintiff received three oral reprimands for tardiness and unprofessional behavior. In September 2003, plaintiff was again allowed to change her starting time. According to Harriel, plaintiff was on disability leave from October 27, 2003 to February 12, 2004. On March 17, 2004, plaintiff received a written reprimand which cited 12 incidents of tardiness and "pattern abuse." (Defendants' Exhibit E.) On March 22, plaintiff once again changed her starting time. On May 17, 2004, plaintiff was placed on a 30-day suspension for failure of good behavior, misfeasance, misuse of state equipment, and unauthorized access after working hours.

{¶ 5} When plaintiff returned to work on June 29, 2004, she received an updated version of OBR's Job Performance and Work Expectations. Harriel testified that plaintiff continued to have attendance problems after her return to work and that Ray Mussio, a labor relations specialist from the Ohio Office of Collective Bargaining, was assigned to conduct an investigation of four incidents of tardiness. Mussio testified that plaintiff admitted that she had been tardy on three of the occasions under investigation and that she did not recall the fourth incident. According to Mussio, plaintiff stated during her interview that she believed she had been "targeted" by OBR's

management and that attendance rules were not evenly enforced. Following the investigation, on October 21, 2004, a pre-disciplinary meeting was conducted which resulted in a finding of just cause for discipline. (Defendants' Exhibit FF.) On November 12, 2004, plaintiff was notified by a letter from Roderick Chu, OBR's Chancellor, that she had been found in violation of OBR's time and attendance policy and that her employment with OBR had been terminated. (Defendants' Exhibit M.)

**WRONGFUL TERMINATION**

{¶ 6} With regard to plaintiff's claim for wrongful termination in violation of public policy, as a member of the bargaining unit, plaintiff was entitled to file a grievance to challenge her termination. Plaintiff did so and her grievance was addressed at the hearing before the arbitrator who upheld plaintiff's removal pursuant to the terms of the union contract. (Defendants' Exhibit O.)

{¶ 7} The Ohio Supreme Court has held that a union employee with terms of employment governed by a collective bargaining agreement is barred from asserting a wrongful termination claim on the basis of public policy. *Haynes v. Zoological Society of Cincinnati* (1995), 73 Ohio St.3d 254. "Wrongful discharge in violation of public policy serves to afford at-will employees protection from employers who unilaterally terminate employees for abusive reasons. Employees subject to a [collective bargaining agreement] do not require judicially-created protection because their employment rights are already subject to protection." *Urban v. Osborn Mfg.*, 165 Ohio App.3d 673, 2006-Ohio-1080, ¶18.

{¶ 8} Inasmuch as plaintiff was a union employee, and the terms of her employment were defined by a collective bargaining agreement, she cannot prevail on her claim for wrongful termination in violation of public policy.


**DEFAMATION**

{¶ 9} As for the claim for defamation, plaintiff contends that OBR published false statements about her tardiness, alleged drug use, and her "threatening conduct."

{¶ 10} Defamation, which includes both libel and slander, is a false publication causing injury to a person's reputation, exposing the person to public hatred, contempt, ridicule, shame or disgrace, or affecting the person adversely in his or her trade or

business. *Sweitzer v. Outlet Communications, Inc.* (1999), 133 Ohio App.3d 102, 108. Under Ohio law, truth is a complete defense to a claim for defamation. *Ed Schory & Sons, Inc. v. Francis*, 75 Ohio St.3d 433, 445, 1996-Ohio-194.

{¶ 11} There is no question that plaintiff violated OBR's time and leave policy. Although plaintiff asserts that Harriel told other employees that plaintiff had been under the influence of drugs or alcohol, Harriel denied making such statements and plaintiff failed to present any credible evidence to support her allegation. Plaintiff also alleged that Kristina Frost stated that plaintiff had exhibited threatening conduct. However, no corroborating evidence was presented to show that Frost made such a comment. The court finds that plaintiff has not proven by a preponderance of the evidence that any statements made by OBR's employees were untrue.

{¶ 12} Furthermore, in the context of a defamation claim, the defense of privilege applies to statements that are "made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right or duty, if made to a person having a corresponding interest or duty on a privileged occasion and in a manner and under circumstances fairly warranted by the occasion and duty, right or interest. The essential elements thereof are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only." *Hahn v. Kotten* (1975), 43 Ohio St.2d 237, 244. A qualified privilege can be defeated only by clear and convincing evidence of actual malice. *Bartlett v. Daniel Drake Mem. Hosp.* (1991), 75 Ohio App.3d 334, 340. "Actual malice" is "acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity." *Jacobs v. Frank* (1991), 60 Ohio St.3d. 111, 116.

{¶ 13} Even if plaintiff had proven that OBR's employees made false and defamatory statements, she could not prevail on her defamation claim if such statements were made subject to a qualified privilege. Plaintiff admits that the alleged defamatory statements made by OBR employees were published in connection with OBR's investigations and disciplinary actions even though plaintiff characterized OBR's actions as a "relentless" conspiracy to terminate her employment. Thus, based upon the totality of the evidence, the court is convinced that the statements at issue

concerned plaintiff's fitness as an employee. As managers, Harriel and Frost had a duty to investigate allegations of tardiness and workplace violence and they made the statements about plaintiff to other OBR employees who had a corresponding interest. In short, statements made either by plaintiff's supervisors or by those employees who were charged with conducting the investigations which led to her termination were conditionally privileged inasmuch as the statements were made in good faith and concerned matters in which the employees had a common interest or duty.

**INVASION OF PRIVACY**

{¶ 14} Plaintiff's claim for invasion of privacy is based upon actions taken by her supervisors, including having her arrival time monitored, posting scheduling information concerning employee hearings, and placing plaintiff on administrative leave. Plaintiff specifically asserts that Harriel and Fullerton should have known that such actions would cause ridicule and embarrassment.

{¶ 15} The Supreme Court of Ohio has recognized an invasion of privacy claim involving "the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Housh v. Peth* (1956), 165 Ohio St. 35, paragraph two of the syllabus. "The scope of a person's liability for intrusion into another's seclusion is stated in Section 652B of the Restatement of Torts 2d, as follows: 'One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.'" *Sustin v. Fee* (1982), 69 Ohio St.2d 143, 145.

{¶ 16} The actions which plaintiff claims to have been a wrongful intrusion into her private activities were conducted during business hours and were, for the most part, open to public observation. Specifically, plaintiff's late arrivals occurred in plain view of other employees. Furthermore, a public employee's expectation of privacy in the workplace may be limited by office practices, work procedures, or regulation. *Brannen v. Bd. of Educ.*(2001), 144 Ohio App.3d 620, 630. Indeed, some government offices may be so open to the public or other employees that there may be no reasonable

expectation of privacy. Id. With regard to plaintiff's assertion that OBR's employees unreasonably monitored her computer use, Ohio courts have found that employees have no expectation of privacy in their office space, computer, or desk if the employer owns them and they are assessable to other employees. *Branan v. Mac Tools*, Franklin App. No. 03AP-1096, 2004-Ohio-5574, ¶43-46; *Coats v. Cuyahoga Metro. Housing. Auth.* (Apr. 12, 2001), Cuyahoga App. No. 78012. Additionally, plaintiff acknowledged that, as early as 2001, she was aware that her supervisors were monitoring both her arrival time and her computer usage. The court finds that plaintiff had no reasonable expectation of privacy regarding her work in OBR's offices.

{¶ 17} Furthermore, in the context of an office environment, periodic monitoring by a supervisor would not be highly offensive to a reasonable person. As discussed above, plaintiff's supervisors had legitimate business reasons for monitoring and investigating her conduct in the office. Although plaintiff testified that she resented being monitored, she failed to prove that such monitoring would be highly offensive to a reasonable person. In fact, plaintiff failed to show that the monitoring was highly offensive to her. In reply to a message from a fellow employee which was critical of a supervisor, plaintiff replied as follows: "I HOPE THAT THEY ARE SPYING ON THIS CONVERSATION. IF SO, GO F%*K YOURSELVES." (Defendants' Exhibit DD.) The court finds that the administrative actions which plaintiff asserts were unwarranted would not be highly offensive to a reasonable person. Accordingly, plaintiff's claim for invasion of privacy must fail.

**HARASSMENT**

{¶ 18} The court construes plaintiff's claim for "harassment" as a claim for intentional infliction of emotional distress. In order to sustain such a claim, plaintiff must show that: "(1) defendant intended to cause emotional distress, or knew or should have known that actions taken would result in serious emotional distress; (2) defendant's conduct was extreme and outrageous; (3) defendant's actions proximately caused plaintiff's psychic injury; and (4) the mental anguish plaintiff suffered was serious." *Hanly v. Riverside Methodist Hosp.* (1991), 78 Ohio App.3d 73, 82; citing *Pyle v. Pyle* (1983), 11 Ohio App.3d 31, 34.

{¶ 19} To constitute conduct sufficient to give rise to a claim of intentional infliction of emotional distress, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yeager v. Local Union 20, Teamsters* (1983), 6 Ohio St.3d 369, 375, quoting 1 Restatement of the Law 2d, Torts (1965) 73, Section 46, Comment d.

{¶ 20} "It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. * * * Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Id. at 374-375.

{¶ 21} The court finds that plaintiff has failed to allege any conduct on the part of OBR's employees that could be reasonably characterized as extreme and outrageous as is necessary to support a claim for intentional infliction of emotional distress. Accordingly, plaintiff cannot prevail on her claim of "harassment" and intentional infliction of emotional distress.

{¶ 22} For the foregoing reasons, judgment shall be rendered in favor of defendants.

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

JADA L. MULLINS

    Plaintiff

v.

OHIO BOARD OF REGENTS, et al.

    Defendants
    Case No. 2006-07023

Judge Joseph T. Clark

<u>JUDGMENT ENTRY</u>

This case was tried to the court on the issue of liability. The court has considered the evidence and, for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor of defendants. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
JOSEPH T. CLARK
Judge

cc:

Susan M. Sullivan
Assistant Attorney General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Jada L. Mullins
P.O. Box 7605
Columbus, Ohio 43207

AMR/cmd
Filed January 22, 2010
To S.C. reporter February 16, 2010