Robert BERNHARD; Scott Anderson; Criag Pefferle; Craig Ansman; Will River; Jeff Quon; Steven Trujillo, Plaintiffs—Appellees,

v.

CITY OF ONTARIO, a Municipal corporation, Defendant,

and

City of Ontario Police Department, a Department thereof; Lloyd Scharf, individually and as Chief of Ontario Police Department; Tony Del Rio, individually and as Captain of Ontario Police Department; Brad Schneider, individually and as Sergeant of Ontario Police Department; Michael Thompson, Defendants—Appellants.

No. 06–55736.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 6, 2008.

Filed March 13, 2008.

Peter Eliasberg, Esq., ACLU Foundation of Southern California, Allan Ides, Esq., Loyola Law School, Los Angeles, CA, Della Bahan, Esq., Berkeley, CA, for Plaintiffs–Appellees.

Bruce E. Disenhouse, Esq., Kinkle Rodiger & Spriggs, Riverside, CA, for Defendant/Defendants–Appellants.

---

* The Honorable Ronald B. Leighton, United States District Judge for the Western District of Washington, sitting by designation.

Before: PREGERSON and WARDLAW, Circuit Judges, and LEIGHTON *, District Judge.

MEMORANDUM **

Plaintiffs are several officers in the Ontario Police Department. They brought this action under 42 U.S.C. § 1983 against various Defendants, including former Ontario Police Detective Brad Schneider ("Schneider"), alleging that Schneider violated their Fourth Amendment rights by arranging for the warrantless, covert video surveillance of their employee locker room while investigating a reported flashlight theft. On partial summary judgment, the district court held that Schneider had violated the Fourth Amendment and that he was not entitled to qualified immunity. Schneider filed this interlocutory appeal.

The parties are familiar with the facts of this case, and we do not repeat them here. We review de novo the district court's qualified immunity determination on summary judgment. *See Boyd v. Benton County,* 374 F.3d 773, 778 (9th Cir.2004). We have jurisdiction under 28 U.S.C. § 1291, *see Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), and we affirm.

"The determination of whether a law enforcement officer is entitled to qualified immunity involves a two-step analysis." *Moreno v. Baca,* 431 F.3d 633, 638 (9th Cir.2005) (citing *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). First, we must determine whether the officer's conduct violated a constitutional right. *See id.* If we find that the officer violated a constitutional right, we next consider whether that right was clearly established at the time the alleged violation occurred. *See id.*

---

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

The undisputed facts demonstrate that Schneider violated Plaintiffs' Fourth Amendment right to be free from unreasonable searches. Whether a particular governmental intrusion constitutes an "unreasonable search" depends on whether the persons searched had an expectation of privacy against the intrusion, and whether that privacy expectation was reasonable. *See Bond v. United States,* 529 U.S. 334, 338, 120 S.Ct. 1462, 146 L.Ed.2d 365 (2000); *United States v. Nerber,* 222 F.3d 597, 599 (9th Cir.2000). Here, Plaintiffs clearly expected that they would not be secretly videotaped in their locker room. There were no signs in the locker room, or anywhere else in the building, announcing that the locker room was subject to video, audio, or photographic surveillance. Plaintiffs were never informed by management, either orally or in writing, that they might be subject to such surveillance. They engaged in private activities in the locker room, such as changing clothes, using the bathroom, and showering.[1] *See Bond,* 529 U.S. at 338, 120 S.Ct. 1462 (holding that plaintiffs must show that they sought "to preserve something as private" to satisfy the subjective part of the Fourth Amendment inquiry (internal quotation marks and alteration omitted)). Finally, each Plaintiff submitted a declaration stating that he had a subjective expectation of privacy against the covert video surveillance of the locker room. Accordingly, we find that Plaintiffs had an expectation of privacy against Schneider's search.

We also find that Plaintiffs' expectation was "one that society is prepared to recognize as reasonable." *Bond,* 529 U.S. at 338, 120 S.Ct. 1462 (internal quotation marks omitted). Although there is no "talisman that determines in all cases those privacy expectations that society is prepared to accept as reasonable," *O'Connor v. Ortega,* 480 U.S. 709, 715, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987) (plurality opinion), here, the totality of the circumstances weighs in Plaintiffs' favor. First, Schneider's intrusion, installing a covert video surveillance camera in the locker room, was severe. *See Nerber,* 222 F.3d at 603 (finding that the nature of the governmental intrusion is a factor courts should consider, and "[h]idden video surveillance is one of the most intrusive investigative mechanisms available to law enforcement"). Second, the place searched—an employee locker room—was not open to the public and was used for private behavior. *See Minnesota v. Carter,* 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998) ("[T]he extent to which the Fourth Amendment protects people may depend upon where those people are." (internal quotation marks omitted)). Finally, common sense dictates that reasonable persons, including police officers, do not expect to be secretly videotaped by other police officers while changing clothes in their workplace locker rooms. *See O'Connor,* 480 U.S. at 715, 107 S.Ct. 1492 (explaining that "our societal understanding that certain areas deserve the most scrupulous protection from government invasion" is a relevant Fourth Amendment factor). Accordingly, we conclude that Plaintiffs' expectation of privacy was reasonable, and that Schneider's search was not.[2]

---

1. Schneider argues that the presence of other officers in the locker room belies Plaintiffs' subjective expectation of privacy. However, as we have previously noted, "[p]rivacy does not require solitude." *United States v. Taketa,* 923 F.2d 665, 673 (9th Cir.1991). That Plaintiffs expected to undress in front of their colleagues does not mean that they expected to undress for the camera.

2. Schneider argues that his use of video surveillance constituted a "public employer search," subject to the relaxed "reasonableness" standard articulated by a plurality of the Supreme Court in *O'Connor v. Ortega.*

Because we find that Schneider's conduct violated Plaintiffs' Fourth Amendment rights, we next consider whether those rights were clearly established in 1996. We hold that, as of 1996, no reasonable officer would have believed that Schneider's conduct was constitutional.

First, several courts, from this Circuit and elsewhere, had recognized prior to 1996 that secret video surveillance is especially intrusive on the privacy interests protected by the Fourth Amendment. *See, e.g., United States v. Koyomejian*, 970 F.2d 536, 551 (9th Cir.1992) (Kozinski, J., concurring) ("As every court considering the issue has noted, video surveillance can result in extraordinarily serious intrusions into personal privacy."); *United States v. Taketa*, 923 F.2d 665, 677 (9th Cir.1991) (finding that warrantless video surveillance of an office violated the Fourth Amendment rights of those who were recorded, including a person recorded in an office that was not his); *United States v. Falls*, 34 F.3d 674, 680 (8th Cir.1994) ("It is clear that silent video surveillance results ... in a very serious, some say Orwellian, invasion of privacy."); *United States v. Mesa–Rincon*, 911 F.2d 1433, 1443 (10th Cir. 1990) ("Because of the invasive nature of video surveillance, the government's showing of necessity must be very high to justify its use."); *United States v. Cuevas–Sanchez*, 821 F.2d 248, 251 (5th Cir.1987) ("[I]ndiscriminate video surveillance raises the spectre of the Orwellian state."). The basic principle articulated in these cases—that covert video surveillance is highly intrusive and justifiable only in rare circumstances—was sufficient to put Schneider on notice that *warrantless* covert video surveillance of a locker room would violate the Fourth Amendment.

Moreover, in 1991, this Circuit held that the covert video surveillance of an employee *in his co-worker's office* violated the Fourth Amendment. *See Taketa*, 923 F.2d at 677. For obvious reasons, the privacy expectation against video surveillance in one's own locker room is greater than in another's office. Unlike most offices, employee locker rooms are usually same-sex. They do not have windows and are typically inaccessible to the public. Furthermore, people do not regularly engage in the private behavior of changing clothes, using the bathroom, or showering within their offices. Accordingly, if an office is a place where people have a privacy interest against covert video surveillance, a locker room is also such a place. Thus, our decision in *Taketa* provided Schneider with fair warning that his actions would violate the Fourth Amendment. *See Hope v. Pelzer*, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) ("[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances.... [T]he salient question ... is whether the state of the law ... gave [the defendant] fair warning that [his] alleged treatment ... was unconstitutional.").

---

*See O'Connor*, 480 U.S. at 722–25, 107 S.Ct. 1492 (holding that government employers need not comply with the warrant and probable cause requirements of the Fourth Amendment to conduct certain types of legitimate, work-related, non-investigatory searches). This argument fails for two reasons. First, the undisputed facts demonstrate that Schneider conducted his search as part of a criminal investigation. Thus, *O'Connor* does not apply. Second, Schneider's search was broader than necessary. Therefore, even if *O'Connor's* "reasonableness" standard did apply, Schneider's actions would fall short of it. *See Schowengerdt v. Gen. Dynamics Corp.*, 823 F.2d 1328, 1336 (9th Cir.1987) (explaining that an *O'Connor* search is too broad "[i]f less intrusive methods were feasible, or if the depth of the inquiry or the extent of the seizure exceeded that necessary for the government's legitimate purposes, such as its interest in security").

For the foregoing reasons, the district court's denial of qualified immunity is **AFFIRMED**.