Accordingly, the Court concludes that the claims in the current litigation are not barred by the doctrine of res judicata.
B. FTCA Judgment Bar
Defendants next argue that because this Court dismissed the FTCA claim in the 2015 Litigation (Count V), plaintiffs' current claims are barred by the FTCA's "judgment bar," 28 U.S.C. § 2676, which provides that:
The judgment in an action under section 1346(b) of this title [the FTCA] shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of *36 the government whose act or omission gave rise to the claim.
28 U.S.C. § 2676.
In the 2015 Litigation, the Court never entered "judgment" on plaintiffs' FTCA claim. The sole FTCA claim in 2015 Litigation was brought against Secretary McDonald in his official capacity as Secretary of the VA. (See Compl. ¶¶ 96-98, 2015 Litigation.) Defendants moved to dismiss the claim for lack of subject matter jurisdiction on the ground that an FTCA claim can only be brought against the United States, not a federal employee or agency. See Allen v. Brown , 185 F.Supp.3d at 10. Plaintiffs conceded that defendants were correct, and the Court, agreeing, dismissed the FTCA claim for lack of subject matter jurisdiction. See Allen v. Brown , 185 F.Supp.3d at 10 ("Count V should have been filed against the United States as the FTCA does not authorize suits against federal officials or federal agencies.") (citing Kissi v. Simmons , No. 09-cv-1377, 2009 WL 3429567, at *1 (D.D.C. Oct. 22, 2009) ("the proper defendant to an action under the FTCA is the United States of America") ). A dismissal for lack of subject matter jurisdiction is not a "judgment on the merits." See 10A C. Wright, A. Miller, & M. Kane, Federal Practice & Procedure § 2713, p. 239 (3d ed. 1998) ("If the court has no jurisdiction, it has no power to enter a judgment on the merits."); Restatement (Second) of Judgments § 11, p. 108 (1980) ("A judgment may properly be rendered against a party only if the court has authority to adjudicate the type of controversy involved in the action."). Accordingly, the dismissal of the FTCA claim in the 2015 Litigation was not a judgment under the FTCA, and the FTCA's judgment bar does not apply.
C. Statute of Limitations (Count 1)
Defendants argue that Counts 1, 2 and 3 are barred by the applicable statute of limitations. Having already concluded that Counts 2 and 3 must be dismissed for failure to exhaust administrative remedies, the Court will limit its discussion to Count 1.
"A court may only rule on a statute of limitations defense when the face of the complaint conclusively indicates it is time-barred." Sykes v. U.S. Att'y for D.C. , 770 F.Supp.2d 152, 154 (D.D.C. 2011). That is not the situation here.
A civil claim under the federal wiretapping statute "may not be commenced later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation." 18 U.S.C. § 2520(e). Defendants argue that Count 1 is barred by this two-year limitations period because "[p]laintiffs have, in essence, admitted that by January 24, 2014 they had 'the first reasonable opportunity to discover the violation,' " yet the pending case was not filed until September 22, 2017. (Defs.' Mem. at 14 (citing Am. Compl. ¶ 36, which states "On January 24, 2014, various officers found a camera with a microphone covertly mounted on a support bracket for the CCTV monitors with a microphone hidden behind the monitors.").) Plaintiffs take the position that Count 1 is a tort that involves "continuing injury," so "the cause of action accrues, and the limitations period begins to run, at the time the tortious conduct ceases." (Pls.' Opp'n at 26.)
Defendant's argument is not persuasive. Under their view, plaintiffs' discovery of the surveillance equipment (in a single location) on January 24, 2014, would bar any federal wiretapping claim filed after January 24, 2016, even if the claim were based on surveillance that took place at different locations or at later dates, including dates within two years of when this case was filed. In other words, if plaintiffs failed to *37 sue before January 24, 2016, defendants would be able to continue their allegedly unlawful conduct indefinitely. This argument is contrary to the law of this jurisdiction. See Page v. United States , 729 F.2d 818, 821 (D.C. Cir. 1984) ("knowledge acquired in 1972 that one has a claim could not trigger time limitations on allegedly tortious conduct that had not then occurred").
In addition, defendants' argument assumes that an extended period of surveillance in multiple locations only constitutes a single violation of the wiretapping statute, but there is authority, arguably endorsed by the D.C. Circuit, that each interception is a discrete violation. See Sparshott v. Feld Entm't, Inc. , 311 F.3d 425, 431 (D.C. Cir. 2002) (dismissing federal wiretap claim where there were "no incidents of wiretapping which occurred within two years of the plaintiffs' filing suit"); see also Fultz v. Gilliam , 942 F.2d 396, 402 (6th Cir. 1991) ("The text of the Wiretapping Act plainly indicates, and its purpose necessitates, that a new and discrete cause of action accrue under section 2511(1)(c) each time a recording of an unlawfully intercepted communication is played to a third party who has not yet heard it.") If that is the case, then interceptions that took place more than two years before the complaint was filed would be barred by the statute of limitations while those that took place within two years would not be.
Plaintiffs suggest an alternative approach, arguing that the surveillance should be treated as a "continuing injury," and that since the complaint alleges that interceptions continued until as late as September 2017, no part of Count 1 is barred by the two-year statute of limitations.
Under either approach, it is not apparent from the face of the complaint that the entirety of Count 1 would be barred by the statute of limitations. But if it turns out that no surveillance took place after September 22, 2015, as defendants maintain, Count 1 will be barred under either approach. Accordingly, the Court will hold in abeyance defendants' statute of limitations challenge to Count 1 to allow limited discovery on the discrete issue of when the surveillance ceased for that may eliminate the need to resolve whether the alleged surveillance should be considered a series of discrete violations or a "continuing injury."[17]
IV. SUMMARY JUDGMENT
Having found no basis for dismissing Counts 1 and 4, the Court will consider defendants' arguments for summary judgment.
A. Federal Wiretapping Claim (Count 1)
As they did in the 2015 Litigation, defendants argue that they are entitled to summary judgment on Count 1 because the federal wiretapping statute does not apply to video-only surveillance and the evidence they have submitted to support their motion for summary judgment establishes that there were no audio recordings. Plaintiffs challenge both defendants' interpretation of the statute (which they did not do in the 2015 Litigation) and their contention that the absence of audio recording *38 can be treated as an undisputed fact before any formal discovery has occurred.
1. Statutory Interpretation
The federal wiretapping statute provides that "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate."[18] 18 U.S.C. § 2520. The statute defines a "wire communication" as "any aural transfer made ... through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception ...." 18 U.S.C. § 2510(1). An "oral communication" is defined as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation ...." 18 U.S.C. § 2510(2). An "electronic communication" is "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted ... by a wire ...." 18 U.S.C. § 2510(12).
In the 2015 Litigation, plaintiffs conceded that silent video surveillance is not a "wire, oral, or electronic communication" as defined by the federal wiretapping statute and, therefore, that the absence of audio recording would doom their federal wiretapping claim. See Allen v. Brown , 185 F.Supp.3d at 6. Now, though, they apparently take a different view, asserting that "even if there were only video surveillance of the Plaintiffs, Defendants have failed to establish that they are entitled to summary judgment." (See Pls.' Opp'n at 20.)
Plaintiffs fail to identify any legal authority in support of their position. Rather, they suggest that defendants' position should be rejected because they "have not cited any controlling authority establishing that ... Title I does not prohibit the use of silent video surveillance" and they rely "primarily" on a decision by a Kansas District Court, Thompson v. Johnson Cty. Cmty. Coll. , 930 F.Supp. 501 (D. Kan. 1996). (Pls.' Opp'n at 20.) While plaintiffs are correct that there is no controlling precedent in this Circuit, there are numerous cases supporting defendants' interpretation. Indeed, every federal appeals or district court to have considered the question has concluded that silent video surveillance is not covered by the federal wiretapping statute." See, e.g. , United States v. Falls , 34 F.3d 674, 679-80 (8th Cir. 1994) ("Title I ... neither regulate[s] nor prohibit[s] domestic silent video surveillance"); United States v. Koyomejian , 970 F.2d 536, 538 (9th Cir. 1992) ("Title I does not address silent video surveillance"); United States v. Jackson , 213 F.3d 1269, 1280 (10th Cir. 2000) ("Title I does not regulate [silent video surveillance]".), judgment vacated on other grounds , 531 U.S. 1033, 121 S.Ct. 621, 148 L.Ed.2d 531 (2000) ; United States v. Batiste , No. 06-cr-20373, 2007 WL 2412837, at *7 (S.D. Fla. Aug. 21, 2007) ("The federal wiretap law does not cover video surveillance where no audio recording is made."), adopted by United States v. Abraham , 2007 WL 9653096 (S.D. Fla. Oct. 1, 2007) ;
*39 United States v. Andonian , 735 F.Supp. 1469 (C.D. Cal. 1990) (statute "does not address video surveillance because the statute only governs 'the interception of wire or oral communications' "), aff'd and remanded , 29 F.3d 634 (9th Cir. 1994).
As various courts have explained, this conclusion is based on both the "plain meaning" of the statutory definitions of "wire, oral, or electronic communication" and the "legislative history" of the statute. Koyomejian , 970 F.2d at 539 ("plain meaning" of the statutory definitions of "wire, oral, or electronic communication," "does not include silent video surveillance"); id. ("The legislative history of Title I also indicates the statute does not regulate silent video surveillance.")[19] ; United States v. Taketa , 923 F.2d 665, 675 (9th Cir. 1991) ("Since the videotaping did not intercept the contents of any communications, it did not violate [the federal wiretapping statute]."); United States v. Larios , 593 F.3d 82, 90 (1st Cir. 2010) ("We agree with our sister circuits that, by its plain meaning, the text of [the statute] does not apply to silent video surveillance" and "the legislative history of the statute and its more recent amendments indicate that Congress did not intend the statute to regulate video surveillance.").
The reasoning of these courts is persuasive. Accordingly, the Court rejects plaintiffs' suggestion that the federal wiretapping statute applies to silent video surveillance.
2. Disputed v. Undisputed Material Fact
Plaintiffs' alternative argument against summary judgment on Count 1 fares better. According to defendants, the absence of audio recording should be considered an undisputed fact because "mere supposition of audio recording is insufficient" and "there is nothing beyond the unsupported statements, devoid of personal knowledge, that can support a claim that any audio recording was made." (Defs.' Mem. at 12-13.) Plaintiffs counter that a "virtually identical argument[ ]" was previously rejected by the Court in the 2015 Litigation on the ground that plaintiffs were entitled to discovery on this issue and that the Court should reach the same conclusion here, especially as the current record includes "additional evidence of audio recording." (Pls.' Opp'n at 18-19.)
Plaintiffs have resubmitted the same declarations as were filed in the 2015 Litigation, so the evidence of audio recording is, in fact, unchanged. The Court's conclusion from the 2015 Litigation is still applicable, and, as it explained then, while defendants have submitted significant evidence to support their contention that no audio recording took place, plaintiffs have produced enough countervailing evidence to preclude summary judgment, especially given the necessity of construing all inferences in plaintiffs favor and plaintiffs submission of a Rule 56(d) declaration requesting document discovery and depositions in order to be able to access any other relevant evidence. See Allen v. Brown , 185 F.Supp.3d at 6-7.
B. Fourth Amendment Bivens Claim Against Chief Brown (Count 4)
In Bivens , the Supreme Court established that federal officials can be sued *40 in their individual capacities for damages for actions taken under the color of law that violate the Fourth Amendment. 403 U.S. at 395, 91 S.Ct. 1999. However, the doctrine of qualified immunity protects government officials from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald , 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) ; see also District of Columbia v. Wesby , --- U.S. ----, 138 S.Ct. 577, 589, 199 L.Ed.2d 453 (2018) ("Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful."). Defendants argue, as they did in the 2015 Litigation, see Allen v. Brown , 185 F.Supp.3d at 8, that they are entitled to summary judgment on the Bivens claim against Chief Brown either because (1) plaintiffs did not have a "reasonable expectation of privacy" from covert audio and video surveillance in the locations at issue so there was no Fourth Amendment violation; or (2) Chief Brown is entitled to qualified immunity because even if the surveillance violated plaintiffs' Fourth Amendment rights, those rights are not "clearly established."
1. Fourth Amendment Violation
The Fourth Amendment's protection "against unreasonable searches and seizures" "applies ... when the government acts in its capacity as an employer." City of Ontario v. Quon , 560 U.S. 746, 756, 130 S.Ct. 2619, 177 L.Ed.2d 216 (2010) ; see O'Connor v. Ortega , 480 U.S. 709, 717, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987). Under the plurality opinion in O'Connor , which has been adopted by the D.C. Circuit, see Stewart v. Evans , 351 F.3d 1239, 1243 (D.C. Cir. 2003), when a government as employer conducts a search or seizure for "noninvestigatory, work-related purposes" or for "investigations of work-related misconduct," the standard for determining whether that search or seizure is reasonable depends on the answer to two questions. See O'Connor , 480 U.S. at 717-24, 107 S.Ct. 1492. The first question is whether, considering the "operational realities of the workplace" "on a case-by-case basis," the employee has a "reasonable expectation of privacy" in the intruded-upon space. Id. at 717-18, 107 S.Ct. 1492. If the answer to that question is yes, Fourth Amendment protections apply, and courts proceed to the question of whether the employer's intrusion was "reasonable[ ] under all the circumstances." Id. at 725-26, 107 S.Ct. 1492 ; see also City of Ontario , 560 U.S. at 756-57, 130 S.Ct. 2619. "Under this reasonableness standard, both the inception and the scope of the intrusion must be reasonable." O'Connor , 480 U.S. at 726, 107 S.Ct. 1492.
To support their claim that the alleged surveillance did not violate the Fourth Amendment, defendants continue to rely on a case from Kansas, where the court rejected a "similar" Bivens claim when it "rejected the claims that ... warrantless video surveillance searches of the security personnel locker area violated [plaintiff officers] Fourth Amendment rights." (Defs.' Mem. at 26-27 (citing Thompson ).) After quoting extensively from Thompson , defendants assert that the facts in Thompson are "similar to the circumstances at issue in the instant action" and, therefore, that "there was no reasonable expectation of privacy and the use of the video for a limited time to address potential workplace misconduct was appropriate." (Id. at 27-28 (citing Brown Decl. ¶¶ 2-21).)
The Court extensively discussed and then rejected this same argument in the 2015 Litigation, ultimately concluding that:
*41 It is not apparent from the existing record, viewed in the light most favorable to plaintiffs, that the undisputed facts establish either that plaintiffs lacked a reasonable expectation of privacy in their conversations or their actions in the rooms where the surveillance allegedly occurred or that, if they had a reasonable expectation of privacy, the search was reasonable in both its inception and its scope. Given that plaintiffs have not yet had the opportunity to take discovery, and considering the disputed facts viewed in the light most favorable to the plaintiffs, the Court cannot find that defendants' surveillance did not violate the Fourth Amendment.
See Allen v. Brown , 185 F.Supp.3d at 9.
The record here is the same as it was in the 2015 Litigation, and the Court continues to find it inadequate to draw the conclusion defendants seek. "[T]he inquiry into reasonableness must be made on a case-by-case basis," and it must be based upon an adequate record. See Stewart v. Evans , 275 F.3d 1126, 1130-31 (D.C. Cir. 2002) (reversing dismissal and remanding because "[w]ithout knowing more about the circumstances surrounding the search, a court simply cannot assess whether it was reasonable.") Under these circumstances, the Court cannot, at this stage, grant summary judgment to defendants on the issue of whether Chief Brown's conduct violated plaintiffs' Fourth Amendment rights.
2. Qualified Immunity
Defendants' qualified immunity argument is similarly premature. Chief Brown is entitled to qualified immunity unless his conduct violated "clearly established" rights. And, as the Supreme Court's recent decision in Wesby emphasized "[c]learly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." Wesby , 138 S.Ct. at 589-90. But, without knowing the facts surrounding each surveillance, not only can it not be determined whether there was a Fourth Amendment violation, it cannot determined whether any such violation violated clearly established rights. See Hedgpeth v. Rahim , 893 F.3d 802, 806 (D.C. Cir. 2018) ) (" 'clearly established law should not be defined at a high level of generality,' but 'must be particularized to the facts of the case' " (quoting White v. Pauly , --- U.S. ----, 137 S.Ct. 548, 552, 196 L.Ed.2d 463 (2017) ). For example, if it turns out that there was video surveillance in the Watch Commander's Office and that it was known that officers used that space as a changing area, that could arguably have constituted a violation of clearly established rights.[20] See, e.g. , Jones v. Houston Cmty. Coll. Sys. , 816 F.Supp.2d 418, 436, 437 (S.D. Tex. 2011) ("a reasonable ... official would have had fair notice that using a covert video surveillance camera secretly to monitor and record female security officers in an office where they changed clothes-an office routinely used as a part-time locker room-was unconstitutional"); Trujillo v. City of Ontario , 428 F.Supp.2d 1094, 1101-09 (C.D. Cal. 2006) (police officers who were secretly videotaped in locker room had reasonable expectation of privacy and search was not reasonable); Bernhard v. City of Ontario , 270 F. App'x 518, 519 (9th Cir. 2008) ("[R]easonable persons, including police officers, do not expect to be secretly videotaped by other police officers while changing *42 clothes in their workplace locker rooms."). Accordingly, the Court cannot at this point grant summary judgment to defendants on the issue of whether Chief Brown is protected by the doctrine of qualified immunity.
V. FUTURE PROCEEDINGS
As previously discussed, there are two potentially dispositive issues with respect to the viability of Count 1, which may be resolved with limited discovery: (1) whether there was audio surveillance (if not, the federal wiretapping statute does not apply, see supra Section IV.A); and (2) what, if any, audio surveillance took place on or after September 22, 2015 (if not, Count 1 is barred by the two-year statute of limitations, see supra Section III.C). In addition, it appears that Count 4 would be barred by the applicable three-year statute of limitations if no surveillance took place on or after September 22, 2014. Further, whether surveillance even occurred in the Watch Commander's Office will bear on the Fourth Amendment analysis.
Accordingly, the Court will permit limited discovery on the following issues:
(1) the existence, location and duration of any audio recording in the three rooms identified in the complaint;
(2) the date when the admitted video surveillance in the Police Control Room and the Police Report Writing Room ceased; and
(3) the existence and duration of any video surveillance in the Watch Commander's Office.
If appropriate, after discovery on these issues, defendants will be given an opportunity to renew their motion for summary judgment on Count 1 or Count 4.
CONCLUSION
For the reasons stated above, the Court will grant in part and deny in part defendants' motion to dismiss or, in the alternative, for summary judgment. The Secretary of the VA is dismissed as a defendant as no claim is brought against him. The two state law claims -- Count 2 (the D.C. wiretapping claim) and Count 3 (the civil conspiracy claim under D.C. law) -- which have been converted into claims against the United States governed by the FTCA, are dismissed without prejudice for lack of subject matter jurisdiction due to plaintiffs' failure to adequately plead administrative exhaustion. Count 1 (the federal wiretapping claim) and Count 4 (the Fourth Amendment Bivens claim) are not subject to dismissal for failure to state a claim, and ruling on summary judgment at this stage would be premature, but defendants will be allowed to renew their motion for summary judgment if appropriate after the conclusion of a period of limited discovery. A separate Order accompanies this Memorandum Opinion.

If it should turn out that no surveillance took place after September 22, 2014, Count 4 would be barred by the three-year statute of limitations from D.C. Code § 12-301(8), which is applicable to Fourth Amendment Bivens claims in the District of Columbia. See, e.g. , Berman v. Crook , 293 F.Supp.3d 48, 56 (D.D.C. 2018) (citing Banks v. Chesapeake and Potomac Telephone Co. , 802 F.2d 1416, 1429 (D.C. Cir. 1986) ).

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351, 82 Stat. 212, was amended and retitled by Title I of the Electronic Communications Privacy Act of 1986, Pub. L. No. 99-508, 100 Stat. 1851 (Title I).See United States v. Koyomejian , 970 F.2d 536, 539 n.1 (9th Cir. 1992). Thus, cases discussing the federal wiretapping statute will use the shorthand of "Title III" or "Title I" to refer to the same statutory provisions. See, e.g. , United States v. Jackson , 213 F.3d 1269, 1280 (10th Cir. 2000).

The 1986 Senate Report on Title I states:
[I]f law enforcement officials were to install their own cameras and create their own closed circuit television picture of a meeting, the capturing of the video images would not be an interception under the statute because there would be no interception of the contents of an electronic communication. Intercepting the audio portion of the meeting would be an interception of an oral communication, and the statute would apply to that portion.
S. Rep. No. 541, 99th Cong., 2d Sess. 16-17, reprinted in 1986 U.S.C.C.A.N. 3555, 3570-71 (emphasis added).

Of course, this assume that surveillance occurred within three years of filing suit. See supra note 17.